[Civ. No. 1066. First Appellate District.—December 13, 1912.]

## STATE COMMISSION IN LUNACY, Appellant, v. JOHN WELCH, as Treasurer of the County of San Benito, State of California, Respondent.

HOME FOR FEEBLE-MINDED—RECOVERY OF COST AND EXPENSE OF MAIN-
TENANCE — ACTION BY STATE COMMISSION IN LUNACY AGAINST
COUNTY TREASURER UNAUTHORIZED.—An action by the state com-
mission in lunacy against the treasurer of a county to recover for
the state the amount due from the county for commitments of
children to the home for the feeble-minded, for the cost of their
maintenance therein, was unauthorized under section 2193 of the
Political Code as it existed prior to the amendment of 1911 thereto.

ID.—PARTIES AUTHORIZED TO BE SUED—SECTION 2197 OF POLITICAL
CODE.—Under section 2197 of the Political Code, the right is given
only "to sue any county, . . . for such care, maintenance, and ex-
pense." The county treasurer under that section cannot be sued for
the county.

ID.—SUIT AGAINST COUNTY TREASURER OR COUNTY—QUESTIONS OF CON-
TROL AND COSTS.—In a suit against the county treasurer, the county
treasurer personally controls the suit, and is liable for costs, while
in an action against the county, the board of supervisors controls
the defense, and the county is liable for the costs.

ID.—INSUFFICIENT COMPLAINT IN MANDAMUS TO COUNTY TREASURER—
WANT OF FUNDS IN TREASURY NOT SHOWN—CAUSE OF ACTION NOT
STATED.—A complaint in *mandamus* to compel the county treasurer
to pay into the state treasury moneys due from the county on account
of inmates therefrom in the state home for the feeble-minded,
which does not allege that there is any money in the county treasury,

or in the custody of the treasurer with which to pay the demand, fails to state a cause of action.

ID.—DEFECT IN PLEADING NOT CURED BY AMENDMENT NOT AFFECTING PENDING LITIGATION.—The defect in such complaint filed prior to the amendment of section 2193 of the Political Code in 1911, dispensing with the necessity of alleging or proving any fact with relation to the funds of the county in a *mandamus* proceeding against the county, was not cured by such amendment, as the same by its terms did not affect pending litigation.

ID.—STATUTORY CONSTRUCTION—RETROACTIVE LAWS—POWER OF LEGISLATURE—LEGISLATIVE INTENT.—While the state legislature has power to pass retroactive laws, which do not impair the obligations of contracts or vested rights, laws are not construed as intended to have a retroactive or retrospective effect, so as to affect pending litigation, unless such intent is expressly declared or necessarily implied in the language of the statute.

APPEAL from a judgment rendered upon demurrer to a petition for a writ of mandate in the Superior Court of San Benito County.   M. T. Dooling, Judge.

The facts are stated in the opinion of the court.

Robert L. Beardslee, John W. Stetson, and C. P. Cutten, for Appellant.

Briggs & Hudner, and H. W. Scott, for Respondent.

HALL, J.—This is an appeal from a judgment rendered against plaintiff, after order sustaining defendant's demurrer to plaintiff's petition for a writ of mandate.  The record affirmatively shows that no application for leave to amend was made.

Plaintiff filed its petition against defendant, as treasurer of the county of San Benito, asking for a writ of mandate to compel defendant, as such treasurer, to pay the state treasurer the sum of $1,460, claimed to be due the state on account of the commitment to, and maintenance in, the Sonoma State Home, of certain children from said county.

The second amended petition was filed August 5, 1910.  A demurrer thereto was filed October 21, 1910, which raised the point of insufficiency of the facts stated to entitle plaintiff

20 Cal. App.—40

to any relief, and also the capacity of plaintiff to bring the action.

Subsequently an act was passed, amending certain sections of the Political Code relating to the subject matter of the action, which took effect in April, 1911.

The demurrer was sustained May 10, 1911.

Appellant contends that the complaint was not demurrable under the law as it stood when the action was commenced, and also that the sufficiency of the complaint and the capacity of plaintiff to sue must be tested by the law as it stood after the taking effect of the amendment in April, 1911.

We shall first examine the complaint in the light of the law as it stood when the action was commenced and the demurrer filed.

Section 2192 of the Political Code, after providing for the commitment of feeble-minded or imbecile persons to the home by a superior judge, and providing that the parent or guardian of such person shall pay to the state home for his support, provides as follows:

"For each child or other person committed to such home there shall be paid by the county from which he is committed to the state treasury the sum of ten dollars monthly for and during each month, or part of month, such person so committed remains an inmate of the hospital, in case the payments herein provided to be made by the parent, guardian, or other person charged with the support of any such person shall not be made."

Section 2193 of the same code, before the amendment thereof in 1911, was as follows:

"Each county auditor must include in his state settlement report rendered to the controller in the months of May and December the amount due the state under this act by reason of commitments to the home for feeble-minded; and the county treasurer, at the time of the settlement with the state in such months, must pay to the state treasurer, upon the order of the controller, the amounts found to be due to the state by reason of the commitments herein referred to."

Section 2197 of the same code provides that—

"The commission may in its own name bring an action to enforce payment for the cost of determining the insanity of any person and securing his admission into a state hospital,

when his estate or any person is liable for the same, or to recover for the use and benefit of any state hospital or for the state the amount due for the care, support, maintenance and expenses of any patient or inmate therein, against any county, person, guardian or relative liable for such care, support, maintenance and expenses.''

When the action was commenced, as well as when the second amended complaint and the demurrer thereto were filed, this was the only authority given the plaintiff to sue to recover any money for the use or benefit of the state. The money that is required to be paid to the state treasurer by the county treasurer (secs. 2192 and 2193) is not paid into any fund for the state home or hospital. The hospital is supported by a general appropriation made therefor, and such sums as may be paid into the contingent fund thereof by persons liable for the support of inmates. The money required to be paid by the county and its treasurer under sections 2192 and 2193 goes into the general fund of the state treasury, and there can therefore be no pretense that plaintiff has any control or power thereover, other than such as is expressly given by the statute.

The section (2197), under which the plaintiff claimed the right to bring this suit against the county treasurer gives only the right to sue ''any county, person, guardian or relative liable for such care, support, maintenance and expenses.''

Appellant claims that the right to sue the county treasurer is embraced within the right to sue the county.

But the county treasurer is not the county, and a suit against the county is a very different affair from a suit against the county treasurer.

In a suit against the county the board of supervisors controls the defense, and the county is liable for such costs as may be awarded to the plaintiff.

The county treasurer controls the defense in an action against him and is liable for the costs.

We cannot hold that the statute as it existed when this action was commenced authorized plaintiff to institute this suit without reading into the statute something neither expressly nor by necessary implication contained therein. This we may not do.

The trial judge, in passing upon the demurrer, seemed to be of the opinion that the complaint failed to state a cause of action because it not only did not appear that any claim had ever been presented to the board of supervisors, but it did affirmatively appear that the county auditor had never issued any warrant for the payment of the money demanded, and had never given any statement to the controller of any amount due the state, as required by section 2193 (Pol. Code).

It is alleged that the controller did issue his orders to the defendant to pay the amounts claimed, which aggregate the sum of $1,460, and cover the years 1903, 1904, 1905, and 1906.

Whether or not the county treasurer may be compelled to pay money from the county funds to the state upon the controller's order, without any warrant or statement from the county auditor, presents an interesting question, but one not necessary to be decided upon this appeal.

There is in the complaint no allegation that there was any money in the county treasury, or in the custody of defendant as such county treasurer, with which to pay the demand sued for,—which defect is expressly pointed out in the demurrer.

Such an allegation is necessary in a petition for a writ of mandate to compel a county treasurer to pay money from the public funds.

In the case of *Stevens* v. *Truman,* 127 Cal. 155, [59 Pac. 397], the rule is thus stated: "There was no duty put upon appellant as treasurer, to pay the order unless he had funds in his control applicable to that purpose, and whether he had the ability to comply with the order ought to have been shown. The rules of pleading in seeking the extraordinary aid of *mandamus* require the petitioner to show a clear *prima facie* case to warrant the alternative writ. There should be sufficient facts stated in the petition to show that the defendant is under legal obligation or duty to perform the required act. (High's Extraordinary Legal Remedies, secs. 449, 450; Wood on Mandamus, 18; *Redding* v. *Bell,* 4 Cal. 333.)

"The complaint failed to allege that there was any fund out of which plaintiff could be paid, and was therefore insufficient."

*People* v. *Reis,* 76 Cal. 269, [18 Pac. 309], was a proceeding in *mandamus* against the treasurer of the city and county of San Francisco. The court said: "It is well settled that

an officer cannot be compelled to pay a sum of money by mandate unless the money is in his official custody, legally subject to the payment of the demand made when the steps are initiated to enforce the payment of such demand by writ of mandate. (See *Redding* v. *Bell,* 4 Cal. 333; *Bates* v. *Porter,* 74 Cal. 224, [15 Pac. 732].)'' See, also, *Day* v. *Callow,* 39 Cal. 593.

Where an officer's duty to issue a warrant for the payment of money is dependent upon there being money in the fund applicable to the payment of the warrant, a petition that is silent upon the subject of money in the treasury is insufficient to entitle the plaintiff to a writ of mandate. (*Cramer* v. *Supervisors,* 18 Cal. 385.)

In the case at bar defendant's duty to pay was dependent upon his having money in his custody as county treasurer applicable to the payment of the demand; and under the rule of pleading laid down in the above cited case such fact was an essential allegation of the petition for the writ. The cases of *Robertson* v. *Library Trustees,* 136 Cal. 403, [69 Pac. 88]; *Babcock* v. *Goodrich,* 47 Cal. 488, and *Worthington* v. *Breed,* 142 Cal. 102, 75 Pac. 675], cited by appellant, were cases against an auditor, where the right to the warrant is not dependent upon the fact of money being in the treasury and are not in point.

Appellant also relies upon certain expressions used by the court in *Connor* v. *Morris,* 23 Cal. 447, and *Jones* v. *Morgan,* 67 Cal. 308, [7 Pac. 734], which were proceedings against the treasurer; but in each of those cases the court was dealing with attacks made upon the petition for failing to aver facts authorizing the issuance of the auditor's warrant, and no question was presented as to any allegation as to the condition of the funds upon which the warrant was drawn. The cases are therefore not in point.

For the reasons above stated the amended petition when filed and when demurred to did not state facts sufficient to constitute a cause of action against defendant.

Appellant, however, contends that even if the objections to the petition above discussed were good at the time of the commencement of the action and the filing of the demurrer, they were obviated by an amendment to the statute which took effect a few days before the demurrer was ruled upon.

This amendment consisted of the re-enactment of section 2193 of the Political Code, with the addition thereto of the following words: "In the event of the failure of the county auditor or county treasurer to do or perform any of the things required in this section, the state commission in lunacy may require the county treasurer by writ of mandate to pay to the state treasurer, upon an order of the controller, all amounts found to be due to the state as aforesaid at the time of the next settlement of the said county treasurer with the state, and it shall be no defense to such a proceeding that the county auditor has failed to include such sums in his said report rendered to the controller; and it shall not be necessary for the said commission to allege or prove any fact with relation to the condition of the funds of the county. The said commission may, in its discretion, recover sums due from counties as in this chapter provided, by the presentation of claims against the board of supervisors, and recovery may be had on all sums due the state for a period of three years next prior to the presentation of any such claims."

It is quite true that the legislature has power to pass retroactive laws, that do not impair the obligation of contracts or vested rights; but it is equally true that laws are not construed as intended to have a retroactive or retrospective effect, so as to affect pending litigation, unless such intent is expressly declared or necessarily implied in the language of the statute.

In *Smith* v. *Lyon,* 44 Conn. 175, the court was considering the effect of a statute enlarging the scope of an action in replevin, passed since the beginning of the action then before the court. The court held that no retroactive effect could be given to the statute, which was broad enough in its language to embrace all cases, past and future. The court said: "One of the firmly established canons for the interpretation of statutes declares that all laws are to commence in the future and operate prospectively, and are to be considered as furnishing a rule for future cases only, unless they contain language unequivocally and certainly embracing past transactions. The rule is one of such obvious convenience and justice as to call for jealous care on the part of the court to protect and preserve it. Retroaction should never be allowed to a statute unless it is required by express command

of the legislature, or by an unavoidable implication arising from the necessity of adopting such a construction in order to give full effect to all of its provisions.''

There is nothing in the language of the statute relied on by appellant in this case that justifies us in giving it any retroactive effect under the rule above stated. That the rule above stated is quite correct, with one possible or rather apparent exception to be hereinafter stated, is abundantly established by adjudicated cases. The latest one to which our attention has been called is *Vanderbilt* v. *All Persons* (S. F. No. 5537), 163 Cal. 507, [126 Pac. 158], decided by the supreme court of this state in Bank, August 14, 1912, where it is said: ''When a remedy is sought which is not authorized by law a subsequent statute giving such remedy does not operate on the existing suit (*Wetzler* v. *Kelly Co.,* 83 Ala. 440, [3 South. 747]). Retroaction is never allowed to a statute unless required by express legislative mandate or unavoidable implication (*Smith* v. *Lyon,* 44 Conn. 178).''

In *Baines* v. *Jemison,* 86 Tex. 118, [23 S. W. 639], the court held that a statute affecting venue could not be given retroactive effect, in the absence of express words giving it such effect, so as to vest a court with jurisdiction of an action then pending, but tried after the statute took effect. This case is interesting in that the court distinguishes it from a previous case (*Houston etc. R. R. Co.* v. *Graves,* 50 Tex. 181), in which it was held that where an amended complaint had been filed without objection, after the new statute had taken effect, the filing of the amended complaint might be treated as the beginning of a new action, and therefore governed by the new statute.

In *Wetzler* v. *Kelly Co.,* 83 Ala. 440, [3 South. 747], it was decided ''that when a suit is instituted, or a defense is interposed, which is at the time unauthorized by the law, a subsequent statute giving such remedy does not operate on the existing suit, especially when it does not provide it shall so operate.''

(See, also, *Sanborn's Estate,* 96 Mich. 606, [56 N. W. 25]; *Gates* v. *Salmon,* 28 Cal. 321.)

The cases of *Ferry* v. *Campbell,* 110 Iowa, 290, [50 L. R. A. 92, 81 N. W. 604], and *Dieterich* v. *Fargo,* 194 N. Y. 359, [22 L. R. A. (N. S.) 696, 87 N. E. 518], cited by appellant,

were cases in equity, where injunctive relief was sought, and are apparent, and only apparent, exceptions to the general rule. In such cases the injunction operates to control the future and oftentimes continuous action of the defendant, and may be granted as required by the law in force when granted.

*Bensley* v. *Ellis,* 39 Cal. 309, is an example of a case where retroactive effect was called for by necessary implication, and was only given effect to allow a remedial motion to be made under a statute passed, before the motion was made, but after the action was brought.

In *Lee* v. *Buckheit,* 49 Wis. 55, [4 N. W. 1077], cited by appellant, the statute (revised statutes) expressly provided that it should apply to pending suits. This is made apparent by an examination of *Kopmeier* v. *O'Neil,* 47 Wis. 593, [3 N. W. 365], cited in *Lee* v. *Buckheit,* where it is said, "Section 4980, R. S., 1878, provides that subsequent proceedings in actions pending at the time the revised statutes of 1878 took effect, shall conform to the provisions of the revised statutes of 1878 when applicable."

In *Johnson* v. *Bradstreet Co.,* 87 Ga. 79, [13 S. E. 250], cited by appellant, an act was passed providing that an action for libel should not abate by the death of the plaintiff. The plaintiff died after the passage of the statute, and it was held that the action did not abate. We do not think that this was in any just sense giving the statute a retroactive effect.

The case of *Kansas Pacific Ry. Co.* v. *Twombly,* 100 U. S. 78, [25 L. Ed. 550], cited by appellant, simply holds the repeal of a statute, under which an action had been brought and judgment recovered and not appealed from, did not affect the judgment. If the case has any bearing upon the case at bar it is distinctly against the position taken by appellant.

*Judd* v. *Judd,* 125 Mich. 228, [84 N. W. 134], cited by appellant, simply holds that a person who refuses to pay a judgment for alimony after the passage of a law authorizing contempt proceedings, may be punished under the act, although the judgment which he refused to pay was rendered before the passage of the law authorizing the contempt proceedings. We do not think this was in any proper sense giving the law in question a retroactive effect.

At any rate, the correct rule supported by the great weight of authority is as laid down in *Smith* v. *Lyon,* 44 Conn. 175,

and approved in *Vanderbilt* v. *All Persons,* 163 Cal. 507, [126 Pac. 158]; and under this rule the position of appellant is not helped by the amendment to the law passed after the filing of the complaint and the demurrer thereto.

The judgment appealed from must be affirmed, and it is so ordered.

Lennon, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 11, 1913.