[S. F. No. 17112.  In Bank.  Oct. 16, 1945.]

BOARD OF SOCIAL WELFARE, Petitioner, v. COUNTY OF LOS ANGELES et al., Respondents.

Robert .W. Kenny, Attorney General, and Clarence A. Linn, Deputy Attorney General, for Petitioner.

J. H. O'Connor, County Counsel, and S. V. O. Prichard, Assistant County Counsel, for Respondents.

SCHAUER, J.—In this mandamus proceeding the State Board of Social Welfare seeks to compel respondents to comply with its orders to return to certain recipients of old age assistance various sums of money which respondent County of Los Angeles had demanded and secured from such recipients in repayment of assistance which the county claimed had been illegally obtained. The following three factual situations are presented:

1. Prior to December 1, 1941, one Fannie Vos received aid, pursuant to an award by the Board of Supervisors of Los Angeles County, in the sum of $40 a month; between January 1, 1942, and May 31, 1943, she was paid as aid from such county the total sum of $520. At that time a needy aged person was entitled to aid notwithstanding the possession of cash or other personal property up to $500 (Welf. & Inst. Code, § 2163) and real estate of an assessed net value up to

$3,000 (Welf. & Inst. Code, § 2164), but upon coming into possession of property in excess of such amounts was required to report such fact immediately to the board of supervisors (Welf. & Inst. Code, § 2222).

During the month of December, 1941, the recipient had come into possession of the additional sum of $805.29 as the proceeds of the sale of certain real property, but (assertedly because of illness) she failed until some time during May, 1943, to inform the county of the receipt of such money. At that time she still had a balance of $550 on hand from such $805.29, of which the county board of supervisors demanded that she deliver to the county the sum of $520 in repayment of the aid she had received between January 1, 1942, and May 31, 1943. On July 29, 1943, Mrs. Vos, in partial compliance with such demand, repaid to the county the sum of $400, and on October 5, 1943, appealed to the State Board of Social Welfare from the order of the board of supervisors that she make such repayment. The welfare board, on December 17, 1943, determined that "As the appellant [Vos] was possessed of $305.29 in excess of the $500 permitted under the Welfare and Institutions Code at a time when she was receiving Old Age Security, this amount is collectible, but none in excess of this amount. The Board therefore orders the return to the appellant of $94.71."

2. Prior to April 3, 1940, the county awarded to one Mary Prahl old age assistance in the sum of $40 a month. On April 30, 1940, she assigned to the county as security for repayment of aid theretofore received (as the result of a prior application and award), her beneficial interest in a second trust deed which then had a face value of $970.78 and a market value of something over $825.16. On October 13, 1942, the county had realized from payments on the trust deed sufficient funds to pay off the previously existing debt. It thereupon reassigned to Mary Prahl the trust deed, the face value of which had been reduced to $816.02 and the market value to $693.62. On November 30, 1942, the board of supervisors found that Mrs. Prahl was, and had been from May 1, 1940, to November 30, 1942, because of her ownership of such trust deed, ineligible for old age assistance payments and that she had illegally received such payments in the sum of $40 per month for a period of thirty-one months, or a total of $1,240. Aid to her was thereupon discontinued and was not restored until February 1, 1943, on which date she reassigned to the county, pursuant to its order, the trust deed mentioned hereinabove.

In February, 1944, the county sold the trust deed for $720.85; that sum, when added to other repayments received by the county from Mrs. Prahl, made a total of $840.85 which she had repaid to it on account of the $1,240 which it asserted she had illegally received as assistance.  On October 4, 1943, Mrs. Prahl appealed to the state welfare board, and on March 23, 1944, that board determined that ''As the trust deed and note were out of the possession of the appellant [Prahl] during the entire period of receipt of Old Age Security with the exception of November of 1942, and as the appellant had no use of this for her own support, it is the determination of the Board that the appellant could not be considered possessed of excess personal property and that therefore the collection on the trust deed made by the county was erroneous.  Of the $840.85 retained by the County, $800.85 is ordered returned to the appellant, the $40 to be retained by the county for repayment of aid paid for the month of November of 1942.''

3.  Prior to November, 1940, one James L. Gilkerson received old age assistance from the County of Los Angeles in the sum of $40 a month, and from that date through May, 1941, he continued to receive assistance in the same monthly sum. However, during such seven-month period from November, 1940, through May, 1941, he owned and was in possession of personal property of a value between $500 and $531.30.   In August, 1941, the county demanded that Gilkerson repay to it the sum of $280 as aid received by him during such seven-month period, and on August 19, 1941, he made the repayment as demanded.  On September 2, 1943, he appealed to the state welfare board in an effort to recover the $280 so repaid to the county; on November 19, 1943, the welfare board found that he had at all times acted in good faith and had made ''no attempt to conceal from the county the true facts,'' and determined that ''appellant [Gilkerson] had no fraudulent intent, and that the money was collected by the county erroneously; and that in accordance with Section 2222.7 of the Welfare and Institutions Code, $248.70 [$280 less $31.30] should be returned to appellant. . . .''

Section 2222.7 of the Welfare and Institutions Code, pursuant to which the welfare board ordered the above-described repayments to recipients of aid, became effective May 7, 1943 (operative July 1, 1943), and provides as follows: ''Whenever the State Department of Social Welfare finds that moneys collected from recipients in repayment of aid granted . . .

have been collected erroneously, because of mistake of law or fact, refunds shall be made as provided in this section. . . . This section shall be applied retroactively, to require the refund of all repayments erroneously collected from recipients of aid within the two years immediately preceding its effective date. . . .'' It should be here noted that part of the repayments to the county in the three cases under consideration occurred within the two years immediately preceding July 1, 1943, and part of them subsequent to that date.

Respondents assert that although the above-quoted section allows the welfare board to order the refund of repayments erroneously collected within two years prior to the effective date of such section, the question as to whether or not a collection was erroneous must be measured by the law as it existed at the time the events occurred and the collection was made (citing *State Commission in Lunacy* v. *Welch* (1912), 20 Cal.App. 624 [129 P. 974]), and not in accordance with the law at and subsequent to July 1, 1943; and that the welfare board has ''obviously attempted to measure the right of repayment'' by the provisions of section 2223.5 of the Welfare and Institutions Code (effective May 7, 1943, operative July 1, 1943), rather than by the provisions of section 2222 of such code as it read prior to May 7, 1943, the provisions of which latter section, claim respondents, are controlling here and effectively negate the right or power of the welfare board to order the refunds which respondents have refused to pay. Petitioner welfare board, on the other hand, states that it is in no wise seeking to uphold its orders by reliance upon section 2223.5 and contends that the repayments collected by the county were erroneous under the law as it existed prior to the adoption of that section.

We are of the opinion that section 2223.5 not only clearly requires that the refunds ordered by the welfare board be paid by the county so far as concerns those portions of the collections made by the county subsequent to July 1, 1943, from the aid recipients here involved, but that such section may properly and (according to the mandate of section 2003 of the Welfare and Institutions Code, that ''This chapter shall be liberally construed'') should be construed as a rule supplied by the Legislature for the guidance of both the welfare board and the counties of the state in the correct interpretation of section 2222 as it was constituted both before and after the adoption of section 2223.5.

Prior to May 7, 1943 (the effective date of section 2223.5),

section 2222 and other applicable sections of the Welfare and Institutions Code read as follows:

Section 2163: "No aid . . . shall be granted or paid to any person who owns personal property the value of which exceeds five hundred dollars [increased to $600 by amendment operative July 1, 1943]. . . ."

Section 2164: "No aid . . . shall be granted or paid to any person who owns real property the assessed value of which . . . exceeds three thousand dollars at the time such person makes application for aid."

Section 2007: "Any person who, knowing he is not entitled thereto, obtains or attempts to obtain aid to which he is not entitled, or a larger amount than that to which he is legally entitled . . . is guilty of a misdemeanor. . . . Whenever any person has illegally obtained aid . . . he shall make restitution, and all actions necessary to secure restitution may be brought against him."

Section 2222: "If, at any time during the continuance of aid, the recipient thereof . . . becomes possessed of any property or income in excess of the amount allowed under the provisions of this chapter, the recipient shall immediately notify the board of supervisors of the receipt and possession of such property or income. *The board may,* on inquiry and with the approval of the State Department of Social Welfare, *either cancel the aid or vary the amount thereof in accordance with circumstances.* Any excess aid theretofore paid shall be returned, in equal proportions to the State and the county participating in the granting of such aid. . . ." (Italics added.)

It will be noted that the above sections provide no exact definition in so many words of the term "excess aid" as used in section 2222, and prior to the adoption of section 2223.5 in 1943 no such definition was supplied by any other legislative enactment. However, the very words *"excess aid"* seem to imply contemplation of a situation in which the recipient was actually entitled to aid but had been overpaid. If, for example, we assume that (all in a period prior to July, 1943) a recipient of aid possessed property believed by him in good faith when he applied for and received the aid payments to be worth no more than $500, but subsequently found to be worth $510, and if we assume further that during the period of such belief he had regularly been paid aid aggregating $1,000 (assumed to be a proper amount if his property was worth no more than $500), then what sum constitutes the

excess aid which he received? Is it $1,000 or $10? Obviously it cannot be the entire $1,000, as respondents here would have us hold it to be, because before there can be an excess there must first be a proper or correct amount, all above which would then make up the excess; the whole, however, could not be "excess." The noun "excess" is defined by Webster's New International Dictionary (1943 ed.) as "State of surpassing or going beyond limits; the fact of being in a measure beyond sufficiency . . .; that which exceeds what is usual, proper, proportionate, or specified. . . ." ██ Consequently it seems reasonable to hold that excess aid is only that amount by which the total payments to the recipient exceed the sum which he was entitled to possess and to receive under prevailing statutes; and it is our opinion that the statutes now being considered contemplate that an aid recipient may and should be allowed at all times to possess personal (or real) property of the maximum value specified by section 2163 (or 2164) of the Welfare and Institutions Code (in these cases, $500 personal property), over and above any aid paid to him, and that the term "excess aid" encompasses only the amount by which the value of his property exceeds the maximum value allowed to him during the period he is an aid recipient. It is, of course, implicit in every case that the application shall have been made in good faith; i. e., that the applicant shall not have knowingly misrepresented the facts.

██ We are of the view that section 2223.5 of the Welfare and Institutions Code (effective May 7, 1943) should be regarded not as an amendment or enlargement of the rights conferred by section 2222 but rather as interpretative of those rights. It (section 2223.5) specifies that "Notwithstanding the provisions [evidently referring to the somewhat ambiguous and uncertain language] of Section[s] 2222 . . . a person who has received aid in good faith, honestly believing himself to be entitled thereto, but who is found to have possessed property in excess of the amount allowed under the provisions of this chapter, shall be considered to have been ineligible for aid only during the period for which the excess property, if it had been applied to his support at the rate of the aid granted to him, would have supported him. In such case the recipient shall repay only the aid he received during such period of ineligibility." No claim is made by the county that any of the three recipients named above did not act in good faith in applying for and receiving aid.

The express declaration of legislative intent as now supplied by section 2223.5, quoted above, seems to point with reasonable certainty to the proper construction, announced above, of the uncertain language of section 2222 and we conclude that the refund orders of the welfare board, with which we are here concerned, are correct and must be obeyed by respondents. ■ As was aptly observed by this court, speaking through Mr. Justice Carter, in *Stockton Sav. & Loan Bank* v. *Massanet* (1941), 18 Cal.2d 200, 204 [114 P.2d 592], "This expression by the legislature . . . of the intent of the [earlier] . . . act, although not binding upon this court in its construction of [such] . . . act, is a factor that may properly be considered in correctly determining the meaning and effect of the [earlier enactment]. . . . [Citations.] That is not giving a retroactive effect to a statute, because the meaning of the statute to be interpreted has always been the same. The subsequent legislation interpreting the statute construed, does not change the meaning; it merely supplies an indication of the legislative intent which may be considered together with other factors in arriving at the true intent existing at the time the legislation was enacted."

■ The further argument is advanced by respondents that payment by them of the refunds to aid recipients which have been ordered by the welfare board would constitute the making of a gift to private persons of "public money or thing of value" in violation of section 31 of article IV of the Constitution. A similar contention was advanced, but rejected by this court, in *County of Alameda* v. *Janssen* (1940), 16 Cal.2d 276 [106 P.2d 11, 130 A.L.R. 1141]. In that case we upheld legislation authorizing county boards of supervisors to release liens held by counties against the real property of aid recipients, as security for aid received, if the property affected by the liens was still owned by the respective aid recipients. Upon the grounds and for the reasons fully and clearly expressed in that case, we hold constitutional the legislation here involved, as well as the orders of the welfare board issued pursuant to such legislation.

It is ordered that the peremptory writ of mandate issue commanding the respondents to make the payments ordered by the State Board of Social Welfare to the persons entitled thereto according to the views hereinabove expressed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.