[Civ. No. 21314, 21315.   Second Dist., Div. One.   July 3, 1956.]

HYMAN LEVINE et al., Appellants, v. STATE BOARD
OF EQUALIZATION, Respondent.

[Two Cases.]

Wadsworth & Fraser and E. L. Fraser for Appellants.

Meserve, Mumper & Hughes, Warren S. Pallette, Trippet, Yoakum, Stearns & Ballantyne, Meyer, Kissel, Matz, Reynolds & Seward, John W. Matz, Seldon R. Bard, Devlin, Diepenbrock & Wulff, and Fitzgerald, Abbott & Beardsley as Amici Curiae on behalf of Appellants.

Edmund G. Brown, Attorney General, James E. Sabine, Assistant Attorney General, Edward Sumner, Dan Kaufmann and James C. Maupin, Deputy Attorneys General, for Respondent.

FOURT, J.—Appellants brought two actions for the recovery of taxes levied and collected under the California Sales and Use Tax Law. The cases were consolidated for trial and judgment in each case went for the defendant.

One action, Case Number 21314, is for the recovery of taxes in the amount of $9,717.17, with interest levied during the period from February 1, 1949, to September 30, 1951. The second action, Case Number 21315, is for the recovery of taxes in the sum of $1,940.18, with interest levied during the period from July 1, 1948, to January 31, 1949. Except for the taxable periods, the legal and factual issues in each action are substantially the same.

The appellants were engaged in designing, engineering, fabricating, selling and installing water cooling towers, aerial towers and industrial wooden products especially designed for industrial processing. The business headquarters were located in Los Angeles, and their principal fabricating plant, storage

and lumberyard were located at Santa Rosa, California. Customers' purchase orders were first sent to the Los Angeles office where design and engineering work was performed. The orders were then forwarded to Santa Rosa, accompanied by requisitions to inventory. Fabrication and loading for shipment were performed at Santa Rosa. The items fabricated were either (1) sold and merely delivered to the job sites specified by customers, or (2) erected on the customers' job sites by appellants. Out-of-state shipments were made by railroad car with appellants as consignee at the out-of-state job site. Appellants' erection superintendent took possession of the shipment upon arrival and with the assistance of local labor supervised the erection work. No deficiency tax assessments were made upon out-of-state sales not involving erection. The business was a specialty in that the items fabricated consisted almost entirely of items specifically engineered for a particular customer.

The instant appeals involve tax and interest measured by the price paid by appellants for materials which were purchased in California, ex tax under resale certificates. The raw materials were first placed in inventory in California and, as orders were received for the erection of one of the completed structures to be manufactured and installed by appellants, after the design and engineering work was done, the necessary raw materials were withdrawn from inventory as required, and fabricated in California for subsequent erection and installation by the appellants outside California on customers' job sites. The purchase, storage and fabrication of the materials all took place in this state.

We are concerned with the provisions of the law as it existed during the taxable periods.[1]

In 1953, section 6009.1 was amended by striking therefrom

---

[1] Revenue and Taxation Code sections:

"§ 6009.1. What not included in 'storage' or 'use.' 'Storage' and 'use' do not include the keeping, retaining or exercising any right or power over tangible personal property shipped or brought into this State for the purpose of subsequently transporting it outside the State for use thereafter solely outside the State, or for the purpose of being processed, fabricated, or manufactured into, attached to or incorporated into, other tangible personal property to be transported outside the State and thereafter used solely outside the State."

"§ 6051. Imposition and rate of tax. For the privilege of selling tangible personal property at retail a tax is hereby imposed upon all retailers at the rate of 2½ percent of the gross receipts of any retailer from the sale of all tangible personal property sold at retail in this State on or after August 1, 1933, and to and including June 30, 1935, and at the rate of 3 percent thereafter, and at the rate of 2½ percent

the words "shipped or brought into this State." In the same year, section 6094 was amended as follows:

"6094. If a purchaser who gives a certificate makes any use of the property other than retention, demonstration, or display while holding it for sale in the regular course of business, the use shall be ~~deemed a retail sale by~~ *taxable to* the purchaser *under Chapter 3 of this part* as of the time the property is first used by him, and the ~~cost~~ *sales price* of the property to him shall be ~~deemed the gross receipts from such retail sale~~ *measure of the tax. Only when there is an unsatisfied use tax liability on this basis shall the seller be liable for sales tax with respect to the sale of the property to the*

---

on and after July 1, 1943, and to and including June 30, 1949, and at the rate of 3 percent thereafter."

"§ 6091. Presumption that gross receipts subject to tax: Burden of proof. For the purpose of the proper administration of this part and to prevent evasion of the sales tax it shall be presumed that all gross receipts are subject to the tax until the contrary is established. The burden of proving that a sale of tangible personal property is not a sale at retail is upon the person who makes the sale unless he takes from the purchaser a certificate to the effect that the property is purchased for resale."

"§ 6092. Purchaser's certificate that purchase for resale: Sufficiency to relieve seller of burden of proof. The certificate relieves the seller from the burden of proof only if taken in good faith from a person who is engaged in the business of selling tangible personal property and who holds the permit provided for in Article 2 of this chapter and who, at the time of purchasing the tangible personal property, intends to sell it in the regular course of business or is unable to ascertain at the time of purchase whether the property will be sold or will be used for some other purpose."

"§ 6093. Same: Execution, form, and contents. The certificate shall be signed by and bear the name and address of the purchaser, shall indicate the number of the permit issued to the purchaser, and shall indicate the general character of the tangible personal property sold by the purchaser in the regular course of business. The certificate shall be substantially in such form as the board may prescribe."

"§ 6094. Effect of using article bought for resale. If a purchaser who gives a certificate makes any use of the property other than retention, demonstration, or display while holding it for sale in the regular course of business, the use shall be deemed a retail sale by the purchaser as of the time the property is first used by him, and the cost of the property to him shall be deemed the gross receipts from such retail sale. If the sole use of the property other than retention, demonstration, or display in the regular course of business is the rental of the property while holding it for sale, the purchaser may elect to include in his gross receipts the amount of the rental charged rather than the cost of the property to him."

"§ 6201. Imposition and rate of tax. An excise tax is hereby imposed on the storage, use, or other consumption in this State of tangible personal property purchased from any retailer on or after July 1, 1935, for storage, use, or other "consumption in this State at the rate of 3 percent of the sales price of the property, and at the rate of 2½ percent on and after July 1, 1943, and to and including June 30, 1949, and at the rate of 3 percent thereafter."

*purchaser.* If the sale use of the property other than retention, demonstration, or display in the regular course of business is the rental of the property while holding it for sale, the purchaser may elect to include in his gross receipts the amount of the rental charged rather than the ~~cost~~ *sales price* of the property to him.'' (Italicizing indicating additions made to the section.)

Where the purchaser gave a valid resale certificate pursuant to sections 6091-6093, and the gross receipts involved were accordingly not included in the measure of the sales tax imposed upon the vendor, any use by the purchaser other than mere retention, demonstration or display while holding the property for sale in the regular course of business was under section 6094, as it read during the period involved herein, and prior to the section's amendment in 1953, deemed a retail sale by the purchaser and subject to the sales tax measured by the purchaser's cost. The amendment of 1953 provided that the use of tangible personal property, other than retention, demonstration or display, for sale in the regular course of business by the one who purchased the property under a valid retail certificate is subject to the use tax imposed by section 6201, rather than the sales tax imposed by section 6051.

During the times with which we are concerned, section 1921 of the California Administrative Code, relating to the Board of Equalization—Sales and Use Tax (being formerly known as Board of Equalization Sales and Use Tax Ruling No. 11), provided in substance as is set forth in the footnote hereto.[2]

---

[2] The term ''Contractor'' as used in this administrative ruling is defined as including both general contractors and subcontractors and including also contractors engaged in such building trades as carpentry, bricklaying, cement work, steel work, plastering, sheet metal work, roofing, tile and terrazzo work, electrical work, plumbing, heating, air conditioning, painting and interior decorating.

The term ''Construction Contracts'' is defined as a contract for erecting a building or other structures on land and includes lump-sum, cost-plus and time-and-material contracts.

The term ''Materials'' is defined as tangible personal property which, when combined with other tangible personal property loses its identity to become an integral and inseparable part of the completed structure. The ruling contains a list of ''materials'' such as flooring, insulation, laths, lumber, oil, paint, piping, valves, pipefittings, putty, roofing, sheet metal, steel, wallboard, weatherstripping, wood preserver, etc.

The term ''Fixtures'' is defined as items accessory to a building and which do not lose their identity as accessories when placed or installed, such as lighting fixtures, etc.

The ruling specifically provides in subdivision (b) (1) that ''Contractors are the consumers of materials used by them in fulfilling construction contracts and the tax applies to the sale of such materials to the contractors.''

Appellants' contention, in substance, is that prior to the 1953 amendment, the Sales and Use Tax Law was ambiguous with respect to the taxation of materials purchased by a California seller under certificates of resale and subsequently fabricated, shipped and erected on out-of-state job sites pursuant to contract with out-of-state purchasers, and that the 1953 amendments to sections 6009.1 and 6094 should be construed as declaration of existing law.

Before the 1953 amendment, section 6009.1 exempted from the definition of taxable storage and use, under certain circumstances, only the use of tangible personal property "shipped or brought into this State for the purpose of subsequently transporting it outside the State for use thereafter solely outside the State, . . ."

In the case of *People* v. *Grazer,* 138 Cal.App.2d 274, 279 [291 P.2d 957], the court said:

"Respondent argues that it has never been the intent or effect of the code provisions to tax the transactions here involved and refers us to the declaration to that effect by the Legislature when it passed the exclusionary section 6019. If the existing law taxed these transactions, and we hold that it did, then the Legislature could not change the law by declaring that it had never intended to tax them.

" 'The usual purpose of a special interpretative statute is to correct a judicial interpretation of a prior law which the Legislature determines to be inaccurate. Where such statutes are given any effect, the effect is prospective only. This seems correct, for any other result would make the Legislature a court of last resort.' (2 Sutherland Statutory Construction, 3d ed., § 3004.)

"In any event the Legislature could not retroactively change what had been the law by declaring what a preceding Legislature had meant by what it had said." (See also *Stockton Sav. & Loan Bank* v. *Massanet,* 18 Cal.2d 200 [114 P.2d 592]; *Board of Soc. Welfare* v. *County of Los Angeles,* 27 Cal.2d 90 [162 P.2d 635]; *California Emp. Stab. Com.* v. *Payne,* 31 Cal.2d 210 [187 P.2d 702].)

The appellant further contends that the imposition of the tax violates the commerce clause of the United States Constitution. The initial sales and purchases of the materials by the appellants were subject to a sales tax in that the property was delivered to appellants at a point in the state. Such

sales were not exempt under section 6352 of the Revenue and Taxation Code, nor was the state deprived of jurisdiction to collect the tax by virtue of the interstate commerce clause of the federal Constitution.

The appellants were engaged in the business of constructing tanks and the items heretofore mentioned, which were fabricated pursuant to contracts to be erected on real property outside of the state. In our opinion they were, under the facts of these particular cases, contractors within the meaning of the law of this state, and were consumers. It was said in *General Elec. Co.* v. *State Bd. of Equalization,* 111 Cal.App.2d 180, 187 [244 P.2d 427] : ". . . Where the materials are combined with other materials so as to lose their identity and become part of the completed structure the contractor is deemed to be the consumer of such materials. . . ."

But for the giving of resale certificates, the sales tax would have applied at the time of the sale of the raw materials to the appellants. By giving the resale certificates appellants escaped reimbursing their sellers for the sales tax at the time of the initial purchases and sales. Such certificates relieved the seller of the obligation initially to pay the sales tax and thus there was no necessity for the sellers to collect sales tax reimbursement from the appellants as buyers. Having elected to accept the conditions of article 3, chapter 2, division 2 of the Revenue and Taxation Code, sections 6091-6095, relative to resale certificates, the appellants are in no position to attempt to avoid the conditions of that article by reference to other provisions in the code and by charges of inconsistency.

There are many situations which develop in the ordinary course of business where the purchaser is unable to determine at the time of the purchase whether he will in fact resell the articles purchased or will use them. The resale certificate provisions of the law were enacted to permit the purchase to be tax free under these circumstances until such time as the ultimate disposition of the property is determined. If that disposition is a resale, in the form of tangible personal property, then no tax is due with respect to the original sale. If that disposition is for a use other than retention, demonstration, or display, while holding it for sale in the regular course of business, then a tax is due because the property was not purchased for resale. However, under these cir-

cumstances, the person who gave the resale certificate is required to pay a tax at the rate of the sales tax, but measured by the cost of the property to him. The Legislature apparently felt that it was fair to impose a tax on the purchaser under these conditions because the seller could have collected reimbursement for the tax from the buyer, except for his reliance upon the resale certificate.

The appellants, in the instant cases, both stored and fabricated the materials in California, pursuant to construction contracts; they were not merely retaining these materials, demonstrating them or displaying them while holding them for sale in the regular course of business. Furthermore, since all of these events took place in California and were preliminary to the actual shipment of the structures, there can be, in our opinion, no application of the interstate commerce clause of the federal Constitution. (*Southern Pac. Co.* v. *Gallagher,* 306 U.S. 167 [59 S.Ct. 389, 83 L.Ed. 586]; *Utah Power & Light Co.* v. *Pfost,* 286 U.S. 165 [52 S.Ct. 548, 76 L.Ed. 1038]; *American Mfg. Co.* v. *St. Louis,* 250 U.S. 459 [39 S.Ct. 522, 63 L.Ed. 1084].) In other words, the appellants cannot use the resale certificate sections to strip the state of its jurisdiction merely because the ultimate and final use of the property took place in another state as part of the continuing process of contracting.

Appellants further contend that extraterritorial effect is being given to the California Sales and Use Tax Law in these cases in that the contracting work was performed outside of the state of California. The actual erection of the structures was only a portion of the contracting agreement. The agreement to erect the structures establishes the nature of the activities of the appellants as a contractor. However, all of the incidents with which the instant cases are concerned, insofar as they involve the applicability of the California Sales and Use Tax Law, are incidents which occurred in California. The property was bought and delivered in California and a sales tax would have been paid but for the giving of the resale certificates; it was stored in California; it was determined that it would be dedicated to the performance of a construction contract and it was removed from storage in California, then fabricated in California, that fabrication consisting of the rendering of contracting services transforming the raw materials into the completed structures prior to their being shipped outside of the state for erection pursuant to the construction agreements.

Article 3, chapter 2, division 2 of the Revenue and Taxation Code relates entirely to resale certificates. ■ The purpose of the provisions of sections 6091-6095 is to relieve the original seller from the payment of sales tax where the property is bought by the purchaser for the purpose of reselling it in the form of tangible personal property. Obviously, the Legislature did not intend to permit parties in this type of transaction to escape payment of a tax entirely by the giving of a resale certificate if it later developed that the property was consumed or used rather than resold in the form of tangible personal property. To prevent this possibility, the Legislature enacted section 6094. Once it is established that the property is not to be resold in the form of tangible personal property then the tax is due and payable since the sales tax was not paid at the time of the original sale. The Legislature has required that the purchaser must now pay the tax, but has related the tax back to the initial purchase to the extent that that purchase price is controlling as to the measure of the tax. There is nothing in sections 6091-6095 to indicate that the Legislature intended in any way to relate these particular provisions of law to problems dealing with interstate commerce.

The appellants further argue that because the board did not tax the sale of materials by the appellants in knocked-down form to be delivered without erection at the out-of-state job sites, the board was inconsistent in taxing the materials fabricated into structures in California pursuant to a construction contract calling for erection of the structures in other states. They further argue that in all cases they were merely selling personal property and should come within the board's rule that gross receipts from sales to manufacturers, producers or processors of tangible personal property which becomes an ingredient or component part of the tangible personal property which they manufacture, produce or process are not taxable. Where the appellants had no construction contract but were merely selling their materials to purchasers out-of-state, they were reselling personal property. But where they entered into a construction contract to fabricate and erect structures on real property, they were essentially performing services. As to the construction contracts they were the consumers of the materials which they had purchased. They were not reselling these materials as personal property, but were rather using them in the process

of fulfilling a construction contract, and thus fall within the provisions of board rule number 11.

Judgment affirmed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied July 30, 1956, and appellants' petition for a hearing by the Supreme Court was denied August 30, 1956. Schauer, J., and McComb, J., were of the opinion that the petition should be granted.