[Civ. No. 21960.   First Dist., Div. Three.   May 10, 1965.]

THE LEARNER COMPANY, Plaintiff and Appellant, v. COUNTY OF ALAMEDA et al., Defendants and Respondents.

Glicksberg, Kushner & Goldberg and Alan S. Maremont for Plaintiff and Appellant.

J. F. Coakley, District Attorney, R. Robert Hunter, Chief Assistant District Attorney, John A. Lewis and Thomas J. Fennone, Deputy District Attorneys, Hilton J. Melby, City Attorney (Oakland), and George M. Cahalan, Deputy City Attorney, for Defendants and Respondents.

DEVINE, J.—The Learner Company, appellant, alleges in its complaint that it owned ships which were located in Alameda County on the first Monday in March, 1959, the tax lien date, and it submitted to the county assessor a valuation based on the price of scrap in or at South San Francisco, less cost of reducing the ships to scrap and cost of freight. The assessor used the cost of the property to the company, a higher valuation, and caused escape assessments to be made on February 27, 1962. These are assessments in subsequent years to make up an earlier deficiency. Appellant paid the escape assessments and penalties on August 2, 1962, under protest, and commenced this action to recover on January 11, 1963.

The merits of the valuation question are not the subject of the action. Appellant's sole contention is that the escape assessments were illegal and beyond the power of the assessor to make because, appellant argues, the period within which escape assessments could be made for the fiscal year had expired before these assessments were made, under the provisions of Revenue and Taxation Code section 532. This contention was rejected by the superior court, demurrer was sustained without leave to amend, and judgment was entered for defendants.

Section 532 has been amended (in 1961) since the assessments were levied. As it was during the relevant time, it read: "The assessor shall not assess personal property without the taxpayer's written permission for the year in which it escaped assessment after two assessment years succeeding the lien date for the year in which it escaped. . . ." There was no written permission. The lien time for the year 1959-1960, which began on July 1, 1959, was noon on March 2, 1959, the first Monday of March. (Rev. & Tax. Code, § 2192.) Since the escape assessments were not made until February 27, 1962, they are too late if section 532 (prior to the effective date of its amendment, September 15, 1961) means, as appellant contends, that by the words "after two assessment years

succeeding the lien date'' the two assessment years commenced on March 2, 1959. The two years would have expired on March 6, 1961, almost a year before the assessments were made. But respondents contend that the two assessment years began on March 7, 1960; hence, February 27, 1962, was within the allowable period.

Every assessment year starts with the first Monday in March. But where there is reference to ''after two assessment years succeeding the lien date,'' does this mean that two full years beyond the year which commences on the first Monday of March were allowed to the taxing authority, so that the total period would be three years?

The question is one of law only and must be answered by the judgment of this court independently of the decision of the superior court. (*McNeil* v. *Board of Retirement,* 51 Cal.2d 278, 285 [332 P.2d 281]; *Pacific Pipeline Constr. Co.* v. *State Board of Equalization,* 49 Cal.2d 729, 736 [321 P.2d 729]; *Gibbons & Reed Co.* v. *Department of Motor Vehicles,* 220 Cal.App.2d 277, 285 [3 Cal.Rptr. 688, 927].) We conclude that the time for escape assessment had expired at the time the assessor attempted to effect it.

### Analysis of Section 532

■ The words ''two assessment years succeeding the lien date'' are appropriate words to describe two years commencing with the lien date. They are singularly inappropriate to mean ''three years commencing with the lien date,'' which would be the meaning if the first of the two assessment years were not to commence until a full year after the lien date. Two does not mean three, and we do not believe that the Legislature meant it to do so, in effect, by the strained construction of striking the lien date from the first year, and thus pushing the commencement date an additional year into the future. The Legislature could have said ''after three years from the lien date'' or, less directly but still effectively, ''after two years from the end of the assessment year which commences with the lien date,'' or less directly still, ''after two years from the assessment year,'' which might be held to mean from the end of the whole assessment year. The Legislature chose to make the period two years succeeding, that is, starting with, the lien date.

The Code Commissioner's Note supports this conclusion. It reads: ''The taxpayer's permission is not necessary if the property is discovered and assessed before two assessment years have passed.'' (Deering's Rev. & Tax. Code Ann.)

In *Imperial Irr. Dist.* v. *County of Riverside,* 96 Cal.App.2d 402, 407 [215 P.2d 518], the court said that section 532 "has long provided a limitation of two years. . . ." This is dictum, but it shows how a court read the statute when using it for certain purposes of comparison. The Attorney General also has referred to section 532 as a two-year statute. (10 Ops. Cal. Atty. Gen. 196, 199.)

The definition of assessment year, as given in Revenue and Taxation Code section 118, is: " 'Assessment year' means the period beginning with a lien date and ending immediately prior to the succeeding lien date for taxes levied by the same agency." The word "succeeding," modifying "lien date" as used in the definition, plainly means the one which follows hard upon the year; it seems logical to consider the same word "succeeding" when it is used to describe an assessment year in section 532, as meaning the one which follows hard upon the lien date, not as one starting after an interval of another year. If a statute were to refer to "January 1, 1965, and the succeeding year," we should regard it as referring to the calendar year commencing January 1, 1965, and ending December 31, 1965, and not to the calendar year commencing January 1, 1966, at least unless very strong reasons were presented in favor of what would appear to be a tortured interpretation.

Respondents cite *Hurst* v. *City & County of San Francisco,* 33 Cal.2d 298, 302 [201 P.2d 805], as giving an interpretation to the words "succeeding fiscal year" as meaning the next complete fiscal year after the date in which a certain public utility rate is fixed, rather than the rest of the fiscal year in which the rate is established, but it was pointed out that if only the remainder of the current fiscal year were intended, there would be no occasion for the use of the word "succeeding" because it was not to be supposed that the purpose of having the new rate was for conditions that occurred in the past. In the case before us, the word "succeeding" refers readily to the year which commences with the lien date of the escape year and ends with the next lien date.

It is argued by respondents that under the interpretation contended for by appellant, the assessor does not get two full years in which to discover and assess escaped property because (1) the lien attaches at the meridian of the lien date and not at the midnight which marks its commencement, and (2) the two years would be reduced because since the tax roll need not be completed until just prior to the first Monday

in July, property which is concealed from the assessor between noon of the first Monday in March and a moment just prior to the first Monday in July will not have acquired "escape status" until the latter time.

As to (1), the loss of the few hours between midnight and noon on the lien date would not seem to handicap even the most purposeful assessor sufficiently to cause acceptance of an interpretation which would add a year to his time for acting. As to (2), it should be observed that it is the assessor's duty to ascertain the taxable property between the first Mondays of March and July (Rev. & Tax. Code, § 405), and that escape assessments are imposed not only on property which has been withheld from the assessor's attention, but on property which has not been taxed because of inadvertence. Part of the two years, therefore, the assessor may be using in the regular process of putting personal property onto the tax roll. But if the time was too short, as, later, the Legislature no doubt found it was, amendment to the statute could, as it did in 1961, extend it.

Respondents cite 2A Words and Phrases, "After," page 394, for the proposition that a period of time which is to be computed after a certain date requires that the date itself be excluded, but the word "after" in section 532 does not refer to the lien date, which might exclude that date, but refers to the assessment years. If it is in effect at all as to a single date, it simply insures to the assessor the last full day of the second assessment year.

### Compare Revenue and Taxation Code Section 2921

Section 2921 is another statute of limitations. It reads: "Property shall not be seized and sold for taxes on the unsecured roll after three assessment years succeeding the date upon which the taxes became a lien." Does the term three years here mean four years? If it does not, why is this so, the other words of the statute which relate to time being the same? And if it does, by respondents' reasoning upon section 532, mean four years, two more questions arise: (1) Why did not the Legislature simply make an appropriate reference to four instead of three; and (2) why did not the Legislature, when amending section 532 in 1961, if "clarification" were needed, as respondents contend was the case with section 532, make a similar amendment of section 2921?

We believe the reasonable answer to these questions is that section 2921 means three years from the lien date, that this

time was deemed sufficient by the Legislature, and that no amendment was needed; and that, because the same language was used in section 532 in reference to a two-year period, section 532 meant two years from the lien date prior to the 1961 amendment.

### History

Each party claims advantage from reference to historical background of section 532. Respondents' argument is this: (1) From 1872, when the original codes were adopted, section 3649 of the Political Code provided for escape assessments (with a penalty of doubling the value) ''for the last preceding year.'' At that time, there was no such thing as an ''assessment year,'' but the fiscal year was defined as commencing on the first day of July. (Cal. Const., art. XX, § 5.) Therefore, the assessor had about two years and four months in which to make escape assessments; that is, from the first Monday in March, the lien date, until the first of July, then through the first fiscal year, and then through the second fiscal year. (2) From 1924 until 1933, intangibles were assessed in a manner which differed from the assessment of other property, and during this period section 3627a of the Political Code expressly provided for a three-year period from the lien date for escape assessments on such intangibles. This, say respondents, shows a three-year pattern. (3) It seems improbable that the Legislature would shorten the period for an escape assessment in 1939, when the state was evolving from agricultural to industrial society, with the greater complexities of the latter.

Answering these arguments, appellant points out that in 1933 section 3649 of the Political Code, predecessor to Revenue and Taxation Code section 532, was amended to limit the escape assessment period expressly to two years from the lien date. (Stats. 1933, ch. 501, p. 1278.) This meant two calendar years because assessment years had not yet been created. In 1935, section 3649 of the Political Code was amended again to allow escape assessments ''for the last preceding year.'' The authority of the assessor to seize and sell personal property for nonpayment of taxes for any year was limited to not more than two years from the lien date. (Stats. 1935, ch. 461, p. 1518.) In 1939, the Revenue and Taxation Code was adopted, replacing many of the Political Code sections on taxation. Assessment year was defined for the first time. The provision in section 532 of the new code, says

appellant, coupled the two-year limitation period which had run through the statutes since 1933 with the newly created assessment year.

We find the argument of appellant to be the better. The idea of a two-year period seems to have been the accepted one, not only because of the reference to two years in earlier statutes but also because section 2921 of the Revenue and Taxation Code (referred to above), as enacted in 1939, retained the two-year limitation on seizure and sale of personal property for nonpayment of taxes, and this was not changed until 1955, to three years. (Stats. 1955, ch. 380, p. 840.) The fact that intangibles carried a three-year escape period under section 3627a of the Political Code during the few years in which they were separately treated, does not show a legislative intent as to tangibles because, as can be seen from the above, even after 3627a had disappeared from the scene, section 3649, as amended in 1933, contained a specific limitation of two years from the lien date.

### The 1961 Amendment

In 1961 there was added to section 532 this sentence: "As used herein 'two assessment years succeeding the lien date for the year in which it escaped' means two assessment years following the assessment year commencing on the lien date of the assessment year for which the property escaped taxation, as said words 'assessment year' are defined in Section 118 of this code." (Stats. 1961, ch. 2015, p. 4229.) Amendments to other sections are contained in the chapter, including an identical sentence as to assessments of real property in Revenue and Taxation Code section 867. Then the chapter contains this sentence: "The amendments made by this act do not constitute a change in, but are declaratory of, the preexisting law, and said amendments shall apply to escape assessments made prior to its effective date." (Stats. 1961, ch. 2015, p. 4230.) Respondents contend that the amendment to section 532 constitutes merely a clarification of the existing law, but that even if it does not, it is sustainable as a retroactive tax measure within the power of the Legislature.

*Change or Mere Clarification.* When a statute is amended by a material change in the language, it is to be presumed that there is an intent to change the preexisting law. (*Loew's Inc.* v. *Byram,* 11 Cal.2d 746, 750 [82 P.2d 1]; *California Motor Transport Co.* v. *Public Utilities Com.,* 59 Cal.2d 270, 274 [28 Cal.Rptr. 868, 379 P.2d 324].) The

declaration by the Legislature that an amendment does not constitute a change in, but is declaratory of, preexisting law, is a factor to be considered by the courts in construing an ambiguous statute (*California Emp. etc. Com.* v. *Payne,* 31 Cal.2d 210, 214 [187 P.2d 702]; *Board of Social Welfare* v. *County of Los Angeles,* 27 Cal.2d 90, 97 [162 P.2d 635]; *Stockton Sav. & Loan Bank* v. *Massanet,* 18 Cal.2d 200, 204 [114 P.2d 592]; *Gibbons & Reed Co.* v. *Department of Motor Vehicles,* 220 Cal.App.2d 277, 287 [33 Cal.Rptr. 688, 927]), but is not binding on the courts (*Stockton Sav. & Loan Bank* v. *Massanet, supra; People* v. *Grazer,* 138 Cal.App.2d 274, 279 [291 P.2d 957]; *Levine* v. *State Board of Equalization,* 142 Cal.App.2d 760, 765 [299 P.2d 738]; *Gibbons & Reed Co.* v. *Department of Motor Vehicles, supra,* p. 287.)

We conclude that because of all the reasons stated above, the 1961 amendment was truly a change in the existing law. We take note of respondents' citation of *San Joaquin Ginning Co.* v. *McColgan,* 20 Cal.2d 254, 264 [125 P.2d 36], wherein it was held that if a certain class of taxpayers is resisting payment of taxes pursuant to a claimed construction of the taxing statute, the Legislature in enacting an addition to the statute may very well be deemed to intend a clarification of its previous language rather than a change in the existing law. But, in the first place, there is nothing in the record to show that a class of taxpayers resisted escape assessments pursuant to a claimed construction of section 532 which differed from that of the taxing authorities; and in the second place, a reading of the *San Joaquin Ginning Co.* case shows that before the amendment the Legislature had provided that a reorganization included a mere change in identity, form or place of organization, *however effected* (p. 259), and that it was a mere refinement or specification to include a distribution in liquidation by a corporation of all or a substantial portion of its business or property to a stockholder within the meaning of reorganization (p. 263).

*Asserted Retroactive Effect.* Respondents take the position that even if the 1961 amendment be a change in the law, it has retroactive effect because a characteristic of tax laws is to make them applicable to a date preceding enactment. (*Holmes* v. *McColgan,* 17 Cal.2d 426, 428 [110 P.2d 428].) But the 1961 amendment does not purport to make a change in the period for escape assessments and to enlarge the period retroactively. It says expressly that the amendments made by the act do *not* constitute a change. Part of the

286

last sentence of Statutes of 1961, chapter 2015, page 4230 does go on to say that the amendments (they cover another section besides 532) shall apply to escape assessments made prior to its effective date. But this is not, as we construe it, an independent enactment of new law, although the specific amendment to section 532, enlarging the period, does enact new law. Our reasons for so holding are (1) that this part of the last sentence of the statute is merely the conclusion which would follow from the declaratory portion of the sentence, if the latter were in fact truly declaratory only, and (2) that if the amendment to section 532 were interpreted as an attempted revival by the Legislature of a power of assessment which had expired, grave constitutional questions would arise (*Chambers* v. *Gallagher,* 177 Cal. 704 [171 P. 931] ; *Douglas Aircraft Co.* v. *Cranston,* 58 Cal.2d 462, 464 [24 Cal.Rptr. 851, 374 P.2d 819]), and our interpretation should be against such construction (*Douglas Aircraft Co.* v. *Cranston, supra,* p. 465).

Judgment reversed.

Draper, P. J., and Salsman, J., concurred.