[No. E014232. Fourth Dist., Div. Two. Mar. 18, 1996.]

PERSONNEL COMMISSION OF THE BARSTOW UNIFIED SCHOOL DISTRICT, Plaintiff and Respondent, v.
BARSTOW UNIFIED SCHOOL DISTRICT et al., Defendants and Appellants;
MAYFLOWER CONTRACT SERVICES, INC., Real Party in Interest and Appellant;
CALIFORNIA SCHOOL EMPLOYEES ASSOCIATION, Intervener and Respondent.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976 and 976.1, this opinion is certified for publication with the exception of part II.D.

## COUNSEL

Atkinson, Andelson, Loya, Ruud & Romo, Ronald C. Ruud and Byron C. Smith for Defendants and Appellants.

Mundell, Odlum & Haws, Karl N. Haws and Julie M. Scorziell for Real Party in Interest and Appellant.

Hill, Farrer & Burrill and Darlene Fischer Phillips for Plaintiff and Respondent.

Margie Valdez and William C. Heath for Intervener and Respondent.

Robert S. Gerstein as Amicus Curiae on behalf of Intervener and Respondent.

## OPINION

**RICHLI, J.**—Respondents Personnel Commission of the Barstow Unified School District (Commission) and California School Employees Association (CSEA) sought a writ of mandate compelling appellants Barstow Unified School District and its board of trustees (collectively referred to as the District) to vacate their decision to lay off the District's transportation workers and contract with appellant Mayflower Contract Services, Inc. (Mayflower) for transportation services. The lower court ruled the District's actions violated the Education Code, and granted a writ. We do not reach the issue of the legality of the layoff and Mayflower contract, because we dispose of the matter on procedural grounds. Specifically, we conclude (1) the Commission lacked standing to sue, and (2) CSEA failed to exhaust administrative remedies.

I

### FACTUAL AND PROCEDURAL BACKGROUND

The District elected in 1967 to adopt a merit system of employment pursuant to Education Code section 45240 et seq.[1] The merit system is, in essence, a civil service system covering classified (i.e., noncertificated) employees of a school district. The merit system statutes require the creation of a personnel commission, which is granted certain authority over the employment of classified employees, as discussed further below.

Until May 1993, classified employees of the District provided student transportation services. In May 1993 the District decided to eliminate 28 classified positions in its transportation department, and to contract with a private company for student transportation. Although the parties disagree whether the District was required to take these actions to meet its budget for the coming fiscal year, there is no dispute that the purpose of the actions was to reduce costs.

On May 25, 1993, CSEA, the employee organization representing the District's classified workers, asked the Commission to investigate the District's decision. On May 28, 1993, the Commission adopted a resolution providing that the District's decision to contract for transportation services violated a rule of the Commission and certain provisions of the Education Code. The Commission advised the District that if it implemented its decision, the Commission would seek whatever remedies were available to resolve the issue.

On June 2, 1993, the District sent layoff notices to 28 employees. Later, 10 of those employees were given other positions within the District, and the remaining 18 were laid off. On June 11, 1993, the District entered into a three-year contract with Mayflower, a private company, to provide transportation services. Mayflower interviewed and hired many of the laid-off workers.

On July 16, 1993, the Commission retained an individual it refers to as a hearing officer to investigate the legality of the District's actions. The officer conducted no hearing, but did receive a letter from the District's counsel setting forth its legal position. He also received written responses from other persons and entities apparently selected by the officer himself. Based on this record, the officer concluded the District's actions violated the Education

---

[1] Further section references are to the Education Code unless otherwise stated.

Code and issued findings and recommendations to that effect. On November 3, 1993, the Commission adopted the findings and recommendations.

On December 7, 1993, the Commission commenced this proceeding. It sought a writ of mandate requiring the District to vacate its decision to contract for transportation services and to reinstate the laid-off employees with backpay. It also sought a declaration that the contract was unlawful. Shortly thereafter, CSEA filed a complaint in intervention seeking essentially the same relief. After a hearing, the lower court on March 3, 1994, issued an order adopting as its opinion the findings and recommendations of the hearing officer, granting a writ of mandate, and requiring the District to pay the Commission's attorney fees. On March 11, 1994, it issued a writ of mandate and a judgment commanding the District to vacate its decision to contract for transportation services, to reinstate the laid-off employees with backpay, and to pay the Commission's attorney fees.

The District and Mayflower appeal. They rely on section 39800, which authorizes a district to "contract with and pay responsible private parties for the transportation" of students. The Commission and CSEA, in turn, rely on section 45256, which requires all work not subject to certain exceptions to be performed by classified employees. As stated, we do not reach the merits.

II

DISCUSSION

A. *Commission's Standing to Sue*

 Code of Civil Procedure section 1086 provides that a writ of mandate "must be issued upon the verified petition of the party beneficially interested." "The requirement that a petitioner be 'beneficially interested' has been generally interpreted to mean that one may obtain the writ only if the person has some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large." (*Carsten* v. *Psychology Examining Com.* (1980) 27 Cal.3d 793, 796 [166 Cal.Rptr. 844, 614 P.2d 276].)

 Code of Civil Procedure section 367 imposes a similar requirement for civil actions generally, stating: "Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute." "A real party in interest ordinarily is defined as the person possessing the right sued upon by reason of the substantive law." (*Killian* v. *Millard* (1991) 228 Cal.App.3d 1601, 1605 [279 Cal.Rptr. 877].)

In its answer to the Commission's petition and complaint, the District alleged the Commission lacked standing to bring this proceeding because it was not an interested party and because CSEA was the exclusive representative of the laid-off employees. Thus, we must consider, as a threshold issue, whether the Commission had standing to bring this proceeding.

### 1. *Statutory background*

The Education Code provisions governing merit system school districts require the appointment of a personnel commission (§ 45240) and describe the commission's responsibilities and authority. Section 45256, subdivision (a) provides that "[t]he commission shall classify all employees and positions within the jurisdiction of the governing board or of the commission, except those which are exempt from the classified service . . . ." Section 45241, however, provides that ". . . the governing board shall employ, pay, and otherwise control the services of persons in positions not requiring certification qualifications [i.e., classified employees] . . . ."

Thus, while the commission classifies employees and positions, the primary authority to make employment decisions concerning classified employees resides in the governing board of the school district. The commission, however, has authority to review certain decisions at the instance of an affected employee. Section 45305 provides that an employee who has been suspended, demoted or dismissed may appeal to the commission. Section 45306 empowers the commission to investigate the matter on appeal and order a hearing at the request of an accused employee. If it sustains the employee, the commission has the power to order backpay and reinstatement, and "may direct such other action as it may find necessary to effect a just settlement of the appeal . . . ." (§ 45307.)

Personnel commissions also are granted the authority to prescribe, amend and interpret "such rules as may be necessary to insure the efficiency of the [classified] service and the selection and retention of employees upon a basis of merit and fitness." (§ 45260, subd. (a).) The rules "shall be binding upon the governing board, but shall not restrict the authority of the governing board provided pursuant to other sections of [the Education Code]." (*Ibid.*) In one of those sections, the Legislature has specifically stated its intent to give school districts "broad authority." (§ 35160.1, subd. (b).) Thus, districts may act "in any manner which is not in conflict with or inconsistent with, or preempted by, any law and which is not in conflict with the purposes for which school districts are established." (§ 35160.) Districts are expressly granted the power to sue. (§ 35162.)

The merit system statutes contain no general provision authorizing a personnel commission to sue, nor do they include any specific provision authorizing a commission to take legal action to challenge decisions of the district concerning the employment of classified employees or the contracting out of work. Although, as stated, a personnel commission has the authority to review certain employment decisions of the governing board, that authority is exercised at the request of the affected employee, not on the commission's own initiative. In the absence of express statutory authorization, the Commission's standing to pursue this proceeding must be evaluated in terms of the criteria for determining standing generally.

### 2. *Beneficial interest*

In its petition and complaint, the Commission asserts a number of interests which it alleges make it a party beneficially interested in this proceeding. We consider each of these interests in turn.

First, the Commission alleges it has an interest in protecting its jurisdiction. However, as stated, the Commission's jurisdiction is limited to reviewing a decision of the governing board to suspend, demote or dismiss an employee, at the request of the affected employee. (§ 45305; *California Sch. Employees Assn.* v. *Personnel Commission* (1970) 3 Cal.3d 139, 144 [89 Cal.Rptr. 620, 474 P.2d 436].) Assuming a governing board's decision to lay off a category of workers to reduce costs is reviewable by a personnel commission under section 45305, there is no indication that a request for such review was made in this case, or that the District acted to prevent such review. Thus, we find no basis for concluding that the District's actions interfered with the Commission's jurisdiction.

The Commission also alleges it has an interest in seeing that its rules are obeyed. However, the Commission acknowledges that the rules allegedly violated—those concerning layoffs of classified employees—merely restate the provisions of section 45308 which provide that classified employees are subject to layoff for lack of work or lack of funds. Allowing the Commission to sue in such circumstances would permit it to confer standing on itself to sue the District over the alleged violation of any Education Code provision, merely by inserting an identical provision in its rules. We find no indication that the Legislature intended personnel commissions to have a general power to enforce the Education Code. At oral argument, in fact, the Commission agreed it has no such power.

Furthermore, if, in fact, the layoff violated the Education Code, the laid-off workers, not the Commission, suffered the resulting injury. The Commission neither employs nor represents the affected workers. Section 45241

specifically designates the District as the workers' employer. Similarly, CSEA is designated by statute as the employees' exclusive representative. Government Code section 3540.1, subdivision (e) provides, " 'Exclusive representative' means the employee organization recognized or certified as the exclusive negotiating representative of certificated or classified employees in an appropriate unit of a public school employer." CSEA is the exclusive representative, within the meaning of Government Code section 3540.1, subdivision (e), of a collective bargaining unit of the District's classified employees, including the transportation workers.

A desire to remedy an alleged statutory violation is not enough, by itself, to establish a beneficial interest. In *Carsten* v. *Psychology Examining Com.*, *supra*, 27 Cal.3d 793, 796, the Supreme Court held that a member of the Psychology Examining Committee of the Board of Medical Quality Assurance lacked standing to petition for mandate to challenge a decision of the committee. The petitioner had dissented from the decision and contended it violated an applicable statute. The court concluded that because the petitioner was not seeking nor in danger of losing a psychology license, she was not a beneficially interested person under Code of Civil Procedure section 1086 despite her contention the committee had violated the law. (27 Cal.3d at p. 797.)

The Commission also asserts an interest in protecting the classified service and classified employees pursuant to the merit system provisions. However, the Commission points to no provision conferring on it the duty to protect employees whom it does not employ or represent. We do not infer from the Commission's statutory authority to *classify* workers a legislative intent that it represent their interests in court.

Finally, the Commission asserts it has a statutory responsibility for insuring the efficiency of the classified services and establishing standards for the selection and retention of classified employees upon a basis of merit and fitness. While section 45260, subdivision (a), authorizes the Commission to prescribe rules to achieve those purposes, whether the District provides transportation services through its own employees or by contracting with a third party does not affect the efficiency of the classified services generally, nor does it affect standards for employee selection and retention.

The Commission contends *Personnel Com.* v. *Board of Education* (1990) 223 Cal.App.3d 1463 [273 Cal.Rptr. 288], demonstrates that personnel commissions have successfully brought suit to enforce their statutory rights. In that case, the board of education voted to reduce the position of personnel

director to a half-time position. The commission sued to compel the board to rescind its action. Although the court affirmed a judgment in favor of the commission, the decision does not support the proposition that the Commission has standing here.

■ First, the court in *Personnel Com.* did not address the issue of the personnel commission's standing to sue the board of education. "Fundamentally, a decision is not authority for a proposition it does not consider and resolve." (*Ellis* v. *McKinnon Broadcasting Co.* (1993) 18 Cal.App.4th 1796, 1806 [23 Cal.Rptr.2d 80]; see also *Gomes* v. *County of Mendocino* (1995) 37 Cal.App.4th 977, 985 [44 Cal.Rptr.2d 93].)

■ Second, even if *Personnel Com.* could be read as supporting the proposition that the commission in that case had standing, it is readily distinguishable from the present case. In *Personnel Com.*, the court based its decision on the fact that the employee involved, the personnel director, was an employee *of the personnel commission*, not the board of education. The court noted that section 45109 authorizes governing boards to fix and prescribe the duties of noncertificated employees, "except those persons employed as a part of a personnel commission staff . . . ." It stated: "Because the members of the Commission's staff are expressly exempted from Board supervision, this duty falls to the Commission itself." (*Personnel Com.* v. *Board of Education, supra,* 223 Cal.App.3d at p. 1467.) It concluded the Legislature intended "to prevent the Board from interfering with the functioning of not only the members of the Commission, but with the Commission's appointed, classified employees as well." (*Id.,* at p. 1468.)

Thus, *Personnel Com.* stands at most for the proposition that a personnel commission properly may litigate matters relating to the employment of its own employees. Because the personnel director in that case was an employee of the commission, the board's action in reducing his level of service directly affected the commission's interests. In the present case, the transportation employees who were laid off were employees of the District, not the Commission. As the court in *Personnel Com., supra,* recognized, under section 45241, "[a]s a general rule, the governing board of a school district . . . has a duty to 'employ, pay, and otherwise control the services' of classified employees." (*Personnel Com.* v. *Board of Education, supra,* 223 Cal.App.3d at p. 1467; see also *California Sch. Employees Assn.* v. *Personnel Commission, supra,* 3 Cal.3d 139, 144 [authority to dismiss bus driver rested exclusively with school district's board of trustees; personnel commission's authority was limited to reviewing board action].)

The allegations of CSEA's complaint in intervention, if true, also demonstrate that the Commission lacks the interest required for standing. CSEA

alleged that its interest (i.e., the interest of the employees it represents) was *not* represented by the existing parties to the action, including, presumably, the Commission. If the Commission were beneficially interested in this proceeding, it would not have been necessary for CSEA to intervene.

At oral argument the Commission cited *Bd. of Soc. Welfare* v. *County of L. A.* (1945) 27 Cal.2d 90 [162 P.2d 635]. In that case the court held the Board of Social Welfare could sue to force the county to issue warrants to needy aged persons. The court based its decision on the fact the board was designated by statute as " 'the single State agency' " with the power to supervise public assistance for the needy aged. (*Id.*, at p. 100, quoting Welf. & Inst. Code, former § 103.5.) It also noted that needy aged persons ordinarily were "unable to maintain such proceedings on their own behalf." (*Bd. of Soc. Welfare, supra*, at p. 100.) In a subsequent decision, the Supreme Court cautioned that *Bd. of Soc. Welfare, supra*, "must be limited strictly to the facts upon which it was based." (*Parker* v. *Bowron* (1953) 40 Cal.2d 344, 354 [254 P.2d 6].) Those facts find no parallel here. Unlike the Board of Social Welfare in *Bd. of Soc. Welfare*, the Commission is not designated by statute as the entity responsible for protecting the rights of the transportation employees. To the contrary, as already discussed, CSEA is designated by statute as the employees' exclusive representative. And unlike the situation in *Bd of Soc. Welfare*, the employees are not unable to proceed without assistance from the Commission; indeed, through CSEA, they have done so.

### 3. *Policy considerations*

In addition to finding no authority authorizing the Commission to sue to challenge the District's decisions with respect to classified employees other than those of the Commission, we perceive policy considerations which militate against encouraging such actions. In *Carsten* v. *Psychology Examining Com., supra*, 27 Cal.3d 793, the Supreme Court in denying a committee member standing to sue the committee said: "We reach this conclusion because of the inevitable damage such lawsuits will inflict upon the administrative process." (*Id.*, at p. 798.) Permitting such suits would be "disruptive to the administrative process and antithetical to its underlying purpose of providing expeditious disposition of problems in a specialized field without recourse to the judiciary." (*Id.*, at p. 799.)

Additionally, the court in *Carsten* observed that permitting members to sue their own agencies would be "purely and simply duplicative, a rerun of the administrative proceedings in a second, more formal forum. The dissident board member, having failed to persuade her four colleagues to her

viewpoint, now has to persuade merely one judge. The number of such suits emanating from members on city, county, special district and state boards, will add significantly to court calendar congestion." (*Carsten* v. *Psychology Examining Com., supra*, 27 Cal.3d 793, 799.)

This case presents a number of the objectionable features noted by the Supreme Court in *Carsten*. The same potential for disruption of the administrative process is present. As discussed above, the intent of the legislative scheme is that school district governing boards be entrusted with decisions concerning classified employees, with the exception of employees of the personnel commission itself. (§§ 45241, 45109.) The commission's role is to hear appeals at the request of affected employees. Permitting litigation of the kind brought here, however, would effectively make each decision of the governing board subject to judicial review at the instance of the commission.

As in *Carsten*, the court proceedings would entail a rerun of the administrative proceedings. The Commission made clear to the District its objection to the proposed layoff and contracting-out of work. It went further, appointing a so-called hearing officer who purportedly conducted an investigation and rendered findings concerning the legality of the District's action. Unsuccessful in its efforts to dissuade the District from proceeding, the Commission went to court. The real losers are the taxpayers, who must pay litigation costs to resolve what is in essence an internal dispute.

For the above reasons, we conclude the Commission is without standing to proceed. Although the policy considerations articulated in *Carsten, supra*, raise a question whether it is ever desirable for a personnel commission to sue a governing board, we need not and do not decide that question. We hold only that the Commission failed to demonstrate the required beneficial interest in this case. Our conclusion does not deprive the affected employees of a judicial forum. Government Code section 3543.8 provides, "Any employee organization shall have standing to sue in any action or proceeding heretofore or hereafter instituted by it as representative and on behalf of one or more of its members." CSEA alleges in its complaint in intervention that its bargaining unit has the exclusive right to most of the work contracted to Mayflower. As the representative of the displaced workers, CSEA is beneficially interested in the proceeding within the meaning of Code of Civil Procedure section 1086. In fact, CSEA has on numerous occasions filed legal actions challenging the layoff of classified employees for lack of funds (*California Sch. Employees Assn.* v. *Pasadena Unified Sch. Dist.* (1977) 71 Cal.App.3d 318 [139 Cal.Rptr. 633]) and the contracting out of services by school districts. (*California School Employees Assn.* v. *Del Norte County*

*Unified Sch. Dist.* (1992) 2 Cal.App.4th 1396 [4 Cal.Rptr.2d 35]; *California Sch. Employees Assn.* v. *Sunnyvale Elementary Sch. Dist.* (1973) 36 Cal.App.3d 46 [111 Cal.Rptr. 433]; *California School Emp. Assn.* v. *Sequoia etc. School Dist.* (1969) 272 Cal.App.2d 98 [77 Cal.Rptr. 187]; *California Sch. Employees Assn.* v. *Willits Unified Sch. Dist.* (1966) 243 Cal.App.2d 776 [52 Cal.Rptr. 765].) In both the *Sequoia* case and the *Willits* case, the court expressly held CSEA had standing to proceed. (272 Cal.App.2d at pp. 102-104; 243 Cal.App.2d at pp. 779-780.)

In a petition for rehearing, the Commission pointed out that three of the employees were not covered by the collective bargaining agreement between the District and CSEA and therefore were not represented by CSEA. That fact, however, does not establish a beneficial interest on the part of the Commission. The fact remains the Commission does not employ or represent the employees, whether or not they are represented by CSEA. Nor is it necessary or appropriate to confer standing on the Commission in order to protect the rights of the unrepresented employees. The employees, as parties beneficially interested, could sue on their own behalf for the claimed Education Code violations. (See, e.g., *Dixon* v. *Board of Trustees* (1989) 216 Cal.App.3d 1269, 1273 [265 Cal.Rptr. 511] [teacher and teacher's association jointly obtained writ of mandate to remedy violation of § 45028]; *Wygant* v. *Victor Valley Joint Union High School Dist.* (1985) 168 Cal.App.3d 319, 322 [214 Cal.Rptr. 205] [same].) Even if they did not, presumably they, as well as the employees represented by CSEA, would receive the benefit of any judgment CSEA obtained determining that the layoff and Mayflower contract violated the Education Code and requiring the District to vacate its decision to contract out the transportation work.

## B. *Exhaustion of Administrative Remedies*

■ Our conclusion that the Commission lacked standing to bring this proceeding does not dispose of the matter. CSEA, which did have standing, successfully intervened. ■ A complaint in intervention survives the dismissal of the main action. (See *Catello* v. *I.T.T. General Controls* (1984) 152 Cal.App.3d 1009, 1014-1015 [200 Cal.Rptr. 4]; *Klinghoffer* v. *Barasch* (1970) 4 Cal.App.3d 258, 261-262 [84 Cal.Rptr. 350].) ■ Thus, regardless of whether the Commission had standing, CSEA was entitled to pursue its claim that the layoff and Mayflower contract violated the Education Code. With respect to CSEA, however, we must consider a different threshold issue—whether CSEA was required to exhaust administrative remedies available to it. Although the parties' briefing on the merits is extensive and impressive, they discuss exhaustion only summarily.

On or about June 21, 1993, about six months before this action was filed, CSEA filed an unfair practice charge against the District with the Public Employment Relations Board (PERB). Although the record does not contain a copy of the charge, it is described by CSEA as presenting the issue whether the District unilaterally transferred transportation work to Mayflower in retaliation for CSEA's exercise of protected rights and in violation of the District's duty to bargain pursuant to Government Code section 3543.5.

On or about January 20, 1994, PERB issued a complaint alleging that (1) the District's decision to contract for transportation was made because of the laid-off employees' exercise of their rights under the Education Employment Relations Act (EERA), Government Code section 3540 et seq., in violation of Government Code section 3543.5, subdivision (a); (2) the District's failure to afford CSEA prior notice of its decision and an opportunity to negotiate denied CSEA its right to represent the employees and interfered with the employees' right to be represented by CSEA, in violation of Government Code section 3543.5, subdivisions (a) and (b); and (3) the District refused to bargain in good faith concerning its decision, in violation of Government Code section 3543.5, subdivision (c). We take judicial notice of the PERB proceeding pursuant to Evidence Code sections 452, subdivision (c) and 459. (See *El Rancho Unified School Dist.* v. *National Education Assn.* (1983) 33 Cal.3d 946, 950 [192 Cal.Rptr. 123, 663 P.2d 893]; *Fresno Unified School Dist.* v. *National Education Assn.* (1981) 125 Cal.App.3d 259, 263 [177 Cal.Rptr. 888].)

### 1. *Scope of PERB's exclusive jurisdiction*

The EERA governs employer-employee relations within public school systems. Government Code sections 3543.5 and 3543.6 set forth conduct deemed to constitute unfair employment practices by employers or employee organizations. Government Code section 3541.5 provides, "[t]he initial determination as to whether the charges of unfair practices are justified, and, if so, what remedy is necessary to effectuate the purposes of this chapter, shall be a matter within the exclusive jurisdiction of [PERB]." PERB's exclusive jurisdiction extends to all alleged violations of the EERA, not just those which constitute unfair practices. (*Leek* v. *Washington Unified School Dist.* (1981) 124 Cal.App.3d 43, 48-49 [177 Cal.Rptr. 196].)

Additionally, PERB's exclusive jurisdiction is not limited to cases in which it is clear that an EERA violation is involved. Rather, "[i]n applying section 3541.5 to situations dealing with employment disputes, courts have

permitted [PERB] to retain exclusive jurisdiction in order to resolve disputes which *arguably* could give rise to an unfair practice claim." (*Los Angeles Council of School Nurses* v. *Los Angeles Unified School Dist.* (1980) 113 Cal.App.3d 666, 670 [169 Cal.Rptr. 893], italics added; see also *Amador Valley Secondary Educators Assn.* v. *Newlin* (1979) 88 Cal.App.3d 254, 257 [151 Cal.Rptr. 724].) In determining whether conduct in a given case could give rise to an unfair practice claim, a court "must construe the activity broadly." (*California Teachers' Assn.* v. *Livingston Union School Dist.* (1990) 219 Cal.App.3d 1503, 1511 [269 Cal.Rptr. 160].)

At the same time, "PERB does not have exclusive initial jurisdiction where a pure Education Code violation (as opposed to an arguably unfair practice) is alleged." (*Dixon* v. *Board of Trustees, supra,* 216 Cal.App.3d 1269, 1277.) In *Wygant* v. *Victor Valley Joint Union High School Dist., supra,* 168 Cal.App.3d 319, 323, for example, we held that "PERB does not have exclusive initial jurisdiction where a plaintiff's allegations are confined solely to a unilateral violation of Education Code section 45028 [requiring uniformity in salary schedules for certificated employees] by a school district."

The decisions considering PERB preemption of superior court jurisdiction can be divided into three categories. In the first category are cases in which the plaintiff alleges *only* a violation of the Education Code, and no arguable EERA violation is evident. In these cases, the courts find no preemption. (See, e.g., *Dixon* v. *Board of Trustees, supra,* 216 Cal.App.3d 1269, 1277; *Wygant* v. *Victor Valley Joint Union High School Dist., supra,* 168 Cal.App.3d 319, 323; *United Teachers of Ukiah* v. *Board of Education* (1988) 201 Cal.App.3d 632, 638 [251 Cal.Rptr. 499].)

In the second category are cases in which the plaintiff alleges *only* conduct constituting an unfair practice or other violation of the EERA. In these cases, the courts find preemption. (*San Diego Teachers Assn.* v. *Superior Court* (1979) 24 Cal.3d 1, 14 [154 Cal.Rptr. 893, 593 P.2d 838]; *Amador Valley Secondary Educators Assn.* v. *Newlin, supra,* 88 Cal.App.3d 254, 257.)

In the third category are cases in which the plaintiff alleges *both* a violation of the Education Code and an unfair practice or other violation of the EERA. In these cases, the courts again find preemption. (*El Rancho Unified School Dist.* v. *National Education Assn., supra,* 33 Cal.3d 946, 951-952, 961; *Los Angeles Council of School Nurses* v. *Los Angeles Unified School Dist., supra,* 113 Cal.App.3d 666, 669, 672.) In such cases, however, at least in the view of PERB itself, PERB may consider only the alleged

EERA violations, not the alleged violations of the Education Code. (*Gorcey* v. *Oxnard Educators Assn.* (May 5, 1988) PERB Dec. No. 664 at pp. 7-8 [12 PERC ¶ 19067].)

 The case before us fits squarely into none of the above categories. The Commission's petition and complaint, and CSEA's complaint in intervention, allege only that the contracting out violated the Education Code sections requiring nonexempt work to be performed by classified employees, not that it constituted an unfair practice or other violation of the EERA. However, as stated above, CSEA's charge before PERB alleged that the contracting out violated several provisions of the EERA. The question therefore is whether CSEA was entitled to proceed in the superior court on the basis that the pleadings in that court alleged only Education Code violations, in spite of the pendency of CSEA's PERB charge alleging claims over which PERB undeniably would have exclusive initial jurisdiction.

## 2. *Application of exhaustion doctrine to this case*

In *El Rancho Unified School Dist.* v. *National Education Assn., supra,* 33 Cal.3d 946, a school district filed an unfair practice charge with PERB, alleging that teachers' unions had violated the EERA during a strike by threatening, coercing and intimidating the teachers in violation of Government Code section 3543.6, subdivision (b), and by demanding that the district negotiate with the unions even though none of them had been recognized or certified as the teachers' exclusive representative, in violation of Government Code section 3543.6, subdivision (a). While the PERB proceeding was pending, the district filed a tort action in superior court which alleged that the unions had induced the teachers to breach their employment contracts, engaged in an illegal strike, and conspired to coerce the district to negotiate with the unions, in violation of Government Code section 3543.3. The district later alleged, in addition, that the unions had conspired to violate Education Code section 48200, the California Compulsory Education Law, by making it impossible for students to attend school during the strike. Thus, the district alleged both a violation of the EERA and a violation of the Education Code.

Analogizing to the preemption doctrine developed by the federal courts under the National Labor Relations Act (29 U.S.C. § 151 et seq.), the Supreme Court concluded the superior court had no jurisdiction to proceed. (*El Rancho Unified School Dist.* v. *National Education Assn., supra,* 33 Cal.3d at p. 961.) The court noted that PERB might find the teachers were induced to strike against their will, in violation of Government Code section

3543.6, subdivision (b). Indeed, the court pointed out, the district had so alleged in its PERB charge. (33 Cal.3d at p. 954.) PERB also might find the unions violated Government Code section 3543.6, subdivision (a) by attempting through the strike to cause the district to support the unions by meeting and negotiating with them. (33 Cal.3d at p. 955.)

Accordingly, the only remaining question was whether the controversy presented to the court was identical to or different from that which could have been presented to PERB. The district contended PERB would be concerned only with whether unfair labor practices had been committed, whereas the superior court would also consider the harm flowing from the allegedly illegal strike. The court noted, however, that strikes are an unfair practice under the EERA only if they involve a violation of its provisions. The issue before PERB would have been whether the strike itself was unlawful, as it was the means by which the unions allegedly caused the district to meet and negotiate in violation of the EERA. Similarly, in the court action, the district challenged the legality of the strike itself. Therefore, the same controversy was presented in both forums. (*El Rancho Unified School Dist.* v. *National Education Assn.*, *supra*, 33 Cal.3d at p. 957.)

Applying these principles here, the first inquiry—whether there is an arguable EERA violation—is easily answered. Having charged in the PERB proceeding that the District violated the EERA by laying off the workers and contracting with Mayflower, CSEA cannot reasonably contend no *arguable* EERA violation is involved in this case. Indeed, CSEA alleges in its complaint in intervention that the District rejected CSEA's request that it refrain from contracting out transportation services, and rejected the Commission's request that it delay such a decision. The same allegations would support CSEA's charge before PERB that the District failed to negotiate the decision in good faith in violation of Government Code section 3543.5, subdivision (c) of the EERA.

Similarly, the controversy presented in the PERB proceeding and this proceeding is fundamentally the same—the legality of the District's actions in eliminating the transportation department and contracting with Mayflower. Although different laws are alleged to have been violated in the PERB proceeding and this proceeding, the same was true in *El Rancho*. In *El Rancho*, the district claimed in the PERB proceeding that that the unions had violated the EERA, while in the court proceeding it claimed the unions had violated not only the EERA but also a provision of the Education Code and the common law of torts. (33 Cal.3d at pp. 949-953.) The only significant difference between *El Rancho* and this case is that the complaint in this case does not specifically allege an EERA violation.

We do not believe that distinction should preclude application of the exhaustion doctrine. In *Link* v. *Antioch Unified School Dist.* (1983) 142 Cal.App.3d 765 [191 Cal.Rptr. 264], the court held exhaustion was required even though the plaintiffs alleged *only* constitutional violations, not violations of the EERA. The court said: "Looking beyond the constitutional label given to plaintiffs' grievances herein [citation], the substance of conduct complained of may also constitute unfair practices which arguably could be resolved by a PERB ruling." (*Id.,* at p. 769.) Indeed, to hold otherwise would permit a party to avoid exhaustion merely by avoiding any express claim of unfair practice or other EERA violation in its complaint. In *El Rancho*, however, the Supreme Court stated that ". . . what matters is whether the underlying conduct on which the suit is based—*however described in the complaint*—may fall within PERB's exclusive jurisdiction." (*El Rancho Unified School Dist.* v. *National Education Assn., supra,* 33 Cal.3d at p. 954, fn. 13, italics added.)

Here, the underlying conduct complained of—the District's elimination of the transportation department and contracting out of the work—is the same in both the PERB proceeding and this proceeding. CSEA correctly notes that PERB has held it lacks jurisdiction to enforce the Education Code. (*Gorcey* v. *Oxnard Educators Assn., supra,* PERB Dec. No. 664 at pp. 7-8 [12 PERC ¶ 19067].) However, exhaustion is required even where PERB lacks jurisdiction over some of the issues involved. In *Leek* v. *Washington Unified School Dist., supra,* 124 Cal.App.3d 43, the plaintiffs alleged both EERA violations and constitutional violations. Although the court recognized that PERB lacked jurisdiction to grant relief on the constitutional claims, it held the plaintiffs were required to exhaust their administrative remedies "despite the allegations of constitutional violations." (*Id.,* at p. 53.) Similarly, in *Fresno Unified School Dist.* v. *National Education Assn., supra,* 125 Cal.App.3d 259, the court concluded that where a complaint stated two causes of action over which PERB had exclusive initial jurisdiction and one over which PERB and the trial court had concurrent jurisdiction, the court should dismiss the claims over which PERB had exclusive jurisdiction even though it might consider merely staying the remaining claim pending PERB's decision. (*Id.,* at p. 274.)

In contrast, no case has been brought to our attention, and we have found none, in which a litigant was permitted to proceed in superior court on a claim that the adverse party's conduct violated the Education Code, while proceeding simultaneously before PERB on a claim that the same conduct violated the EERA. Nor have we seen a case in which a litigant was permitted to avoid exhaustion merely by omitting from its superior court

pleadings allegations of EERA violations which it asserted before PERB based on the same underlying conduct. "Sophistication of pleading actions is not the key to jurisdiction." (*Fresno Unified School Dist.* v. *National Education Assn.*, *supra*, 125 Cal.App.3d 259, 269.)

A party "[is] not required to exhaust its remedy under the EERA unless PERB could furnish relief equivalent to that which could be provided judicially." (*San Diego Teachers Assn.* v. *Superior Court*, *supra*, 24 Cal.3d 1, 9.) CSEA in its complaint in intervention sought a writ of mandate compelling the District to vacate its decision to contract out transportation services, refrain from taking such action in the future, pay retroactive wages and benefits, and terminate the Mayflower contract. PERB could grant equivalent relief. Government Code Section 3541.5, subdivision (c), specifically authorizes PERB to issue "a decision and order directing an offending party to cease and desist from the unfair practice and to take such affirmative action, including but not limited to the reinstatement of employees with or without back pay, as will effectuate the policies of this chapter." PERB also is authorized under section 3541.3, subdivision (j) "[t]o bring an action in a court of competent jurisdiction to enforce any of its orders, decisions, or rulings." These provisions empower PERB to grant CSEA "relief functionally equivalent to that available in a court action." (*Leek* v. *Washington Unified School Dist.*, *supra*, 124 Cal.App.3d 43, 52.) Although the Commission's petition and complaint additionally sought declaratory relief, even assuming CSEA could take over that claim, a claim for declaratory relief may not be used "to avoid the inconvenience of deferred judicial review" by bypassing an administrative remedy. (*Fresno Unified School Dist.* v. *National Education Assn.*, *supra*, 125 Cal.App.3d 259, 269.)

At oral argument, CSEA suggested it would be prejudiced if it were required to exhaust its PERB remedy while another party were allowed to proceed with the case without CSEA's involvement. It is difficult to conceive of such a situation; presumably, any party with standing to sue also would be required to exhaust. At any rate, no such situation is presented here and we need not consider whether an exception to the exhaustion requirement might apply under those circumstances.

Following oral argument, CSEA advised us that PERB issued a decision dismissing CSEA's charge and complaint on the basis that the collective bargaining agreement between CSEA and the District authorized the Mayflower contract. PERB did not consider the legality of the contract under the Education Code. Although CSEA stated it intended to seek reconsideration and, failing that, judicial review under Government Code section 3542, it

argues that if PERB's final decision does not change and this court does not review the decision, the Education Code issue might never be addressed. Therefore, CSEA asserts, the administrative remedy may prove to be inadequate, and instead of dismissing the action we should vacate our submission of this matter pursuant to California Rules of Court, rule 22.5(b) and stay our decision pending the outcome of the PERB proceedings so that we may determine, at that point, whether further judicial relief is required. CSEA contends *Fresno Unified School Dist.* v. *National Education Assn., supra,* 125 Cal.App.3d 259, supports such a course of action.

*Fresno Unified School Dist.* does not support CSEA's position. The court in that case concluded a stay of proceedings in the *trial court* might be appropriate. (*Fresno Unified School Dist.* v. *National Education Assn., supra,* 125 Cal.App.3d at p. 274.) The court did not suggest proceedings on appeal should be suspended pending exhaustion of a required remedy. Such a conclusion would encourage parties simply to ignore the exhaustion requirement. If a party could proceed to judgment in the trial court without exhausting, and then merely suspend proceedings on appeal once the exhaustion requirement was asserted, there would be no incentive to exhaust in the first instance.

Indeed, "[a]n administrative procedure is part of the legislative process and it has been recognized that ' "the legislative process remains incomplete" until the administrative remedy is exhausted.' [Citation.] A judicial action before the legislative process has been completed is premature and a court is without jurisdiction until administrative remedies have been exhausted. [Citation.] To hold otherwise would be to permit the courts to engage in an unwarranted interference with the legislative process." (*County of Contra Costa* v. *State of California* (1986) 177 Cal.App.3d 62, 77 [222 Cal.Rptr. 750].) Because CSEA failed to exhaust its remedy, the trial court lacked jurisdiction to proceed, and its judgment was premature and is not properly before us for review.

Further, it simply is not the case that if PERB does not address the legality of the Mayflower contract under the Education Code, and this court denies review, the issue never will be addressed. Having exhausted its administrative remedy, CSEA will be free to challenge the legality of the contract in the lower court, as it improperly attempted to do initially. Should it be unsuccessful, it will have the opportunity at that point to present the matter to this court for a decision on the merits.

We are, however, persuaded that it would be appropriate under *Fresno Unified School Dist., supra,* to stay proceedings in the lower court as to

CSEA's Education Code claims rather than to dismiss CSEA's complaint outright. In the *Fresno* case, the district challenged a strike which arguably constituted both an unfair practice under the EERA and a breach of the collective bargaining agreement. The court noted that Labor Code section 1126 provided for judicial enforcement of the agreement, while Government Code section 3541.5, subdivision (b), deprived PERB of authority to enforce it. Accordingly, "further judicial relief" might be required on the breach of contract claim if PERB's decision on the unfair practice claim did not render it moot. (125 Cal.App.3d at p. 273.) Therefore, it was appropriate to stay trial court proceedings on the contract claim: "The stay protects the status quo of the contract issues pending the resolution of PERB of the unfair practice issues which are within its exclusive jurisdiction and subject to review only pursuant to the limits provided in [Government Code] section 3542." (*Id.*, at p. 274.)

The situation is analogous here: PERB has exclusive initial jurisdiction to the extent CSEA's claims arguably charge an unfair practice, but lacks authority to determine CSEA's Education Code claims. (*Gorcey v. Oxnard Educators Assn., supra*, PERB Dec. No. 664 [12 PERC ¶ 19067].) Thus, further judicial relief may be required if PERB's ultimate decision does not obviate the Education Code claims, as would be the case, for example, if CSEA did not obtain from PERB the same relief it could obtain from a court on the Education Code claims. We therefore direct the lower court to issue a stay as to those claims on such terms as it may find to be appropriate. If necessary, the claims can be considered in the lower court when CSEA has fully exhausted its PERB remedy.

C. *Attorney Fees*

 The Commission requests that the District be required to pay its attorney fees pursuant to section 45313. Section 45313 requires the governing board's counsel to represent the personnel commission in all legal matters, and authorizes the commission to retain other counsel at the expense of the district if the board's counsel refuses to represent the commission. Because we have concluded the Legislature did not intend to confer standing on the Commission to bring this proceeding, we further conclude it did not intend section 45313 to require the payment of the Commission's fees incurred in doing so. We need not and do not decide whether section 45313 could ever be applied to require a school district to pay a personnel commission's fees incurred in suing the district.

D. ·*Requests for Judicial Notice**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III

### DISPOSITION

The judgment of the superior court is reversed and the matter is remanded to that court with directions to dismiss the proceeding as to the claims asserted by the Commission, and to stay the proceeding as to the Education Code claims asserted by CSEA. The parties shall bear their own costs on appeal.

Ramirez, P. J., and McKinster, J., concurred.

A petition for a rehearing was denied April 12, 1996, and the opinion was modified to read as printed above. The petition of respondent Personnel Commission of the Barstow Unified School District for review by the Supreme Court was denied June 12, 1996.

---

*See footnote, *ante*, page 871.