Filed 5/29/13  Cal. School Employees Assn. v. Santa Ana Unif. School Dist et al. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CALIFORNIA SCHOOL EMPLOYEES ASSOCIATION et al.,<br><br>    Appellants,<br><br>        v.<br><br>SANTA ANA UNIFIED SCHOOL DISTRICT, GOVERNING BOARD OF SANTA ANA SCHOOL DISTRICT et al.,<br><br>    Respondents. | G047078<br><br>(Super. Ct. No. 30-2010-00336248-CU-PT-CJC)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Thierry Patrick Colaw, Judge.  Reversed and remanded.

Michael R. Clancy, Christina C. Bleuler, and Charmaine L. Huntting for Appellants.

Law Offices of Eric Bathen, Eric J. Bathen and Jordan C. Meyer for Respondents.

The California School Employees Association, the association's Santa Ana chapter, and a member of the association (collectively referred to as CSEA) sought a peremptory writ of mandate compelling the Santa Ana Unified School District, its governing board, and two of its superintendents (collectively referred to as the District) to rescind the District's partnership agreement with THINK Together, Inc. (THINK) for the provision of after-school program management services because the partnership agreement allegedly violated Education Code section 45103.1.[1] CSEA also sought the reinstatement of classified employees to the after-school tutoring positions they held prior to the District's agreement with THINK, and an order directing the District to compensate the purportedly displaced classified employees for their losses due to the THINK partnership agreement. The trial court determined the after-school tutoring positions held by the classified employees prior to the District's agreement with THINK were extra duty assignments "at-will," rather than permanent classified school employment positions, and the employees who held those positions never obtained permanent status for the extra duty hours they worked. Consequently, the trial court held the District's agreement with THINK did not violate the provisions of section 45103.1, and denied the peremptory writ of mandate requested by CSEA. We need not consider CSEA's appeal with regard to the trial court's ruling on the substantive issues. Instead, we dispose of the appeal on procedural grounds by concluding CSEA failed to exhaust administrative remedies. We reverse the trial court's order and remand the matter with directions to stay the proceedings until CSEA exhausts administrative remedies.

## FACTUAL & PROCEDURAL HISTORY

For more than a decade, the District, a K-12 public school district, has operated after-school tutoring programs at many of its schools to provide students with supplemental instruction and supervision. From as early as 2003 to 2008, the District and

[1] All further statutory references are to the Education Code, unless otherwise indicated.

2

CSEA, the labor union which represents classified school employees in California's school systems, collectively bargained the hours, wages, and benefits received by the classified employees who staffed the District's after-school programs. In 2003, the District and CSEA entered into a Memorandum of Understanding (MOU) for the creation of After School Instruction Provider (ASIP) positions to provide instruction to students attending the District's after-school programs. In 2005, the District and CSEA entered into a separate MOU recognizing the creation of After-School Site Coordinator (ASSC) positions to coordinate the District's after-school programs. The District also created job descriptions for the ASIP and ASSC positions. Furthermore, in 2005, CSEA and the District jointly filed a petition with the Public Employment Relations Board (PERB) to add the ASSC position to their bargaining unit, and PERB approved the addition soon thereafter.

The District recognized serious issues with the operation of its after-school programs over the course of numerous school years prior to 2008. For example, the after-school programs were consistently over budget, were sometimes discontinued prior to the end of the school year, and often failed to comply with the requirements of regulatory agencies. In January 2008, to address and correct these issues, the District approved the negotiation of a contract with THINK, a private nonprofit organization, to provide management services for the District's after-school programs. The District was interested in pursuing a partnership agreement with THINK because the nonprofit organization was already administering successful after-school programs at 12 of the District's schools, and the nonprofit possessed expertise with regard to program management, regulatory compliance, and private fundraising.

In January 2008, the District sent a letter to each of its ASSC employees to inform them of the District's decision to proceed with the negotiation of a partnership agreement with THINK for the provision of program management services, and to invite the employees to an informational meeting. At the meeting, the District explained the

3

proposed partnership agreement with THINK to the employees and described the expectations and responsibilities that were likely to be assigned to the ASSC positions.

In March 2008, representatives from the District and CSEA met to discuss the potential partnership agreement with THINK. The District told CSEA the purpose of the proposed agreement was not to contract out the District's after-school program services to THINK and the District anticipated the classified employees would have the opportunity to continue to work in their after-school program positions. Following the meeting, the District believed CSEA was in agreement as to the benefits of the potential partnership with THINK.

In May 2008, the District approved a public-private partnership agreement with THINK for the purpose of authorizing the nonprofit to oversee and coordinate the District's after-school tutoring programs beginning with the 2008-2009 school year. The partnership agreement required THINK to provide full-time site coordinators to oversee after-school programs that were not already supervised by a District ASSC. Furthermore, the partnership agreement authorized the District to designate specific after-school programs, which should be overseen by both a THINK site coordinator and a District ASSC. With regard to the staffing of the other after-school program positions, such as the ASIP positions, the partnership agreement states the positions should be filled by staff employed by either the District or THINK, or by volunteers.

The present dispute arose during the 2008-2009 school year, when the parties' conflicting positions with regard to whether the ASIP positions were classified, whether the District impermissibly eliminated both the ASIP and ASSC positions because of the THINK partnership agreement, and the scope of the partnership agreement became evident. During the 2007-2008 school year, the District's after-school programs were staffed by more than 300 classified employees who held ASIP or ASSC positions, and these employees provided students with supplementary instructional services at 43 of the District's schools. CSEA contends the District, without providing notice to CSEA or

4

any of the District's employees, eliminated all ASIP positions by June 2008 and all ASSC positions by July 2008. One classified employee, who previously held an ASIP position, learned his ASIP position had been eliminated when he received a job flyer from THINK advising him to apply for an after-school tutoring position in the employ of the nonprofit. The job flyer, which he found in his District mailbox in June 2008, states the new THINK positions were created to replace the District's ASIP positions.

CSEA asserts both the ASIP and ASSC positions have always been considered and treated as classified positions by the District. Thus, CSEA contends the District's purported elimination of these positions following the execution of the partnership agreement with THINK was impermissible.

The District disputes this claim, arguing the ASIP positions were never considered permanent classified positions. The District contends all of the classified employees who served as ASIPs during the 2007-2008 school year held separate classified positions with the District during regular school hours, and these separate, regular positions established the employees' status as classified employees. The ASIP positions, the District asserts, were "at-will" positions, rather than permanent classified positions, and merely provided the employees with the opportunity to earn "extra duty" pay. As the ASIP positions were purportedly "at-will" positions, the District argues these employees had no continuing right to receive these extra duty hours. In support of its argument, the District notes these classified employees would have remained classified employees even if the District had decided to completely discontinue the after-school programs because they held separate, regular classified positions. Thus, the District maintains the classified employees were not displaced and did not lose any of their permanent wages, hours, benefits, or seniority when the District formed the partnership agreement with THINK.

Furthermore, the District rejects CSEA's contention all ASSC positions were eliminated by July 2008. First, the District asserts it still employs some of the same

5

ASSCs it employed prior to the execution of the partnership agreement with THINK. Second, the District maintains the employees who staffed the District's ASSC positions were never forced to leave their positions. Instead, the District attributes the increase in the number of vacant ASSC positions to employees' dissatisfaction with regard to the additional job responsibilities assigned to the ASSC positions needed to ensure the after-school programs were complying with administrative regulations. As evidence for this assertion, the District points to the fact many employees voluntarily left their ASSC positions when the District explained the additional responsibilities that would be assigned to the positions. Third, the District argues it continues to interview applicants for vacant ASSC positions; thus, it contends CSEA's assertion the ASSC positions have been eliminated has no merit. Finally, the District acknowledges some employees were dismissed from their ASSC positions since the District entered into its partnership with THINK because the employees were not able to keep their assigned after-school programs in compliance with applicable regulations or their performance of the position was otherwise ineffective.

CSEA asserts THINK, pursuant to its partnership agreement with the District, began to use its own employees to perform the same services that had previously been performed by the District's employees in their ASIP and ASSC positions. CSEA argues the District's partnership agreement with THINK has caused the classified employees who previously held ASIP or ASSC positions to suffer: (1) a reduction in their hours of District employment (if they held a separate classified position with the District during the regular school day); or (2) being laid off from their classified employment entirely (if they did not hold another classified position with the District). Moreover, CSEA contends the employees who previously held ASIP or ASSC positions and are now employed by THINK to staff the after-school programs receive less total compensation because of the partnership agreement. Specifically, CSEA asserts these classified employees no longer earn sick leave, vacation leave, and retirement service

credit accrual at the same rate they did when they held ASIP or ASSC positions. Furthermore, CSEA contends these classified employees receive lower wages as THINK employees than they did in their previous ASIP or ASSC positions because their THINK wages are not subject to contractual salary increases.

The District maintains it did not contract out personnel services when it entered into the partnership agreement with THINK. Instead, the District asserts the partnership agreement was necessary to improve the District's after-school programs and ensure the programs were in compliance with agency regulations.

CSEA claims to have sent two letters, dated September 5, 2008, and February 3, 2009, to the District requesting information about the after-school programs, the partnership agreement with THINK, and the alleged displacement of classified employees holding ASIP positions. The letter dated February 3, 2009, also asserts the District's alleged conduct in contracting out the personnel services previously provided by classified employees in ASIP positions may be in conflict with the collective bargaining agreement (CBA) and constitute a violation of section 45103.1. The District maintains that it never saw either letter from CSEA.

On January 14, 2010, CSEA filed a petition for a peremptory writ of mandate against the District. The petition alleged the District violated section 45103.1, subdivision (a)(1)(A), (a)(2), and (a)(3), by entering into a contract with THINK to provide after-school tutoring services previously performed by classified employees. To remedy the alleged violation, the petition requested the trial court compel the District to: (1) rescind the District's partnership agreement with THINK; (2) reinstate the classified employees to the after-school tutoring positions they held prior to the District's contract with THINK; (3) make the allegedly displaced CSEA classified employees whole for their losses due to the District's agreement with THINK; and (4) comply with section 45103.1 in the future.

7

On February 16, 2010, the District filed a demurrer on various grounds, including the grounds CSEA failed to exhaust administrative remedies before PERB. The trial court overruled the demurrer on March 24, 2010.

On February 8, 2012, the trial court issued its ruling denying CSEA's petition for writ of mandate. The court concluded the District's partnership agreement with THINK did not violate section 45103.1 because the ASIP and ASSC positions were extra duty assignments "at-will," rather than permanent classified school employment positions, and the holders of those positions never obtained permanent status for the hours they worked during the after-school programs.

## DISCUSSION

The Education Employment Relations Act (EERA), Government Code section 3540 et seq., regulates employer-employee relations within California's public school systems.[2] Government Code section 3543.5 specifies conduct which a public school employer, such as the District, is prohibited from doing. For instance, pursuant to Government Code section 3543.5, subdivision (c), public school employers are barred from refusing or failing to meet and negotiate in good faith with the representatives of its classified employees, such as representatives from CSEA.

To ensure the implementation and enforcement of EERA, PERB was established with the enactment of the statute. (Gov. Code, § 3541.) The powers and duties of PERB are set forth in Government Code section 3541.3, and they include, among many other things, the power "[t]o investigate unfair practice charges or alleged violations of [EERA], and take any action and make any determinations in respect of

[2] The Legislature enacted EERA "to promote the improvement of personnel management and employer-employee relations . . . by providing a uniform basis for recognizing the right of public school employees to join organizations of their own choice, to be represented by the organizations in their professional and employment relationships with public school employers, to select one employee organization as the exclusive representative of the employees in an appropriate unit, and to afford certificated employees a voice in the formulation of education policy." (Gov. Code, § 3540.)

8

these charges or alleged violations as the board deems necessary to effectuate the policies of [EERA]." (Gov. Code, § 3541.3, subd. (i).) Importantly, EERA also provides PERB with the "*exclusive jurisdiction*" to make "[t]he *initial determination* as to whether . . . charges of unfair practices are justified, and, if so, what remedy is necessary to effectuate the purposes of [the statute]." (Gov. Code, § 3541.5, italics added.) "PERB's exclusive jurisdiction extends to all alleged violations of the EERA, not just those which constitute unfair practices. [Citation.]" (*Personnel Comm. v. Barstow Unified School Dist.* (1996) 43 Cal.App.4th 871, 885 (*Barstow Unified School Dist.*).) The Legislature's decision to give *exclusive initial jurisdiction* to PERB allows the board to carry out its duty to effectuate and implement the purposes and policies of EERA (i.e., "to promote the improvement of personnel management and employer-employee relations within the public school systems in the State of California" (Gov. Code, § 3540)). (*International Federation of Prof. & Technical Engineers v. Bunch* (1995) 40 Cal.App.4th 670, 675-676.)

"This statutory scheme has been consistently interpreted to confer limited jurisdiction to PERB." (*California Teachers' Assn. v. Livingston Union School Dist.* (1990) 219 Cal.App.3d 1503, 1510 (*Livingston Union School Dist.*).) Although "PERB does not have exclusive jurisdiction where a *pure* Education Code violation (*as opposed to an arguably unfair practice*) is alleged" (*Dixon v. Board of Trustees* (1989) 216 Cal.App.3d 1269, 1277, italics added), it is well settled the board retains exclusive jurisdiction over disputes which "*arguably*" constitute an unfair labor practice claim under EERA. (*Barstow Unified School Dist.*, *supra*, 43 Cal.App.4th at pp. 885-886; *Livingston Union School Dist.*, *supra*, 219 Cal.App.3d at p. 1510.) When determining whether a public school employer's conduct may give rise to an unfair labor practice claim, a court "must construe the activity broadly." (*Livingston Union School Dist.*, *supra*, 219 Cal.App.3d at p. 1511.)

9

In *Barstow Unified School Dist.,* the court explained appellate court decisions considering PERB preemption of superior court jurisdiction can be divided into four categories. (*Barstow Unified School Dist., supra,* 43 Cal.App.4th at pp. 886-892.) "In the first category are cases in which the plaintiff alleges *only* a violation of the Education Code, *and no arguable EERA violation is evident*. In these cases, the courts find no preemption. (See, e.g., *Dixon v. Board of Trustees*, *supra*, 216 Cal.App.3d 1269, 1277; *Wygant v. Victor Valley Joint Union High School Dist.* [(1985)] 168 Cal.App.3d 319, 323; *United Teachers of Ukiah v. Board of Education* (1988) 201 Cal.App.3d 632, 638.)" (*Barstow Unified School Dist., supra,* 43 Cal.App.4th at p. 886, second italics added.)

"In the second category are cases in which the plaintiff alleges *only* conduct constituting an unfair practice or other violation of the EERA. In these cases, the courts find preemption. (*San Diego Teachers Assn. v. Superior Court* (1979) 24 Cal.3d 1, 14; *Amador Valley Secondary Educators Assn. v. Newlin* [(1979)] 88 Cal.App.3d 254, 257.)" (*Barstow Unified School Dist.*, *supra*, 43 Cal.App.4th at p. 886.)

"In the third category are cases in which the plaintiff alleges *both* a violation of the Education Code and an unfair practice or other violation of the EERA. In these cases, the courts again find preemption. (*El Rancho Unified School Dist. v. National Education Assn.* [(1983)] 33 Cal.3d 946, 951-952, 961; *Los Angeles Council of School Nurses v. Los Angeles Unified School Dist.* [(1980)] 113 Cal.App.3d 666, 669, 672.) In such cases, however, at least in the view of PERB itself, PERB may consider only the alleged EERA violation, not the alleged violations of the Education Code. (*Grocey v. Oxnard Educators Assn.* (May 5, 1998) PERB Dec. No. 664 at pp. 7-8 [12 PERC ¶ 19067].)" (*Barstow Unified School Dist.*, *supra*, 43 Cal.App.4th at pp. 886-887.)

In the fourth category—which is exemplified by the facts and procedural history of *Barstow Unified School Dist.*—are cases in which the plaintiff alleges only a violation of the Education Code; however, an arguable EERA violation is evident from

10

the controversy presented to the court. (*Barstow Unified School Dist.*, *supra*, 43 Cal.App.4th at pp. 887-892.) Such cases are preempted by PERB's exclusive initial jurisdiction over unfair labor practice claims. (*Ibid.*)

In *Barstow Unified School Dist.*, the complaint filed by CSEA in superior court alleged the school district violated provisions of the Education Code by contracting with a private company for the provision of student transportation services, which purportedly caused the displacement of more than two dozen classified employees. (*Barstow Unified School Dist.*, *supra*, 43 Cal.App.4th at pp. 876-877, 887.) Like the present case, the complaint filed by CSEA in the superior court stated nothing with regard to whether the district's contracting constituted an unfair labor practice under EERA. (*Id.* at p. 887.) However, in *Barstow Unified School Dist.*, CSEA had also brought a separate, concurrent action before PERB, which contended the district's contract was an unfair labor practice under EERA. (*Ibid.*)

The appellate court applied a three-part inquiry to determine whether, in light of PERB's exclusive initial jurisdiction to hear unfair labor practice claims, the superior court had jurisdiction to rule on CSEA's Education Code claims prior to the exhaustion of the administrative action before PERB. (*Barstow Unified School Dist.*, *supra*, 43 Cal.App.4th at pp. 888-892.) Specifically, the court asked: (1) whether the controversy presented to the superior court was "an arguable EERA violation"; (2) whether the legal controversy presented to the superior court was "fundamentally the same" as the controversy presented to PERB; and (3) whether "PERB could furnish relief equivalent to that which could be provided judicially." (*Id.* at pp. 888, 890.)

The court answered all three questions in the affirmative. (*Barstow Unified School Dist.*, *supra*, 43 Cal.App.4th at pp. 888-892.) First, the court found CSEA's contention the district displaced classified employees by contracting out services to a private company clearly indicated an arguable EERA violation was involved in the dispute, especially in light of the fact CSEA alleged the district rejected its requests to not

11

contract out the services and to delay the decision to enter into the service contract. (*Id.* at p. 888.) According to the court, these allegations supported a claim the district violated Government Code section 3543.5, subdivision (c), by failing to negotiate the service contracting decision in good faith. (*Ibid.*)

Second, the court found the legal controversy presented to the superior court was fundamentally the same as the controversy presented to PERB—the legality of the district's actions in eliminating the classified employee positions and contracting out the same services to the private company. (*Barstow Unified School Dist.*, *supra*, 43 Cal.App.4th at p. 888.) The fact the claims brought before the superior court and PERB alleged violations of different laws did not preclude the court's application of the administrative exhaustion doctrine because the essence of the offending conduct constituted an unfair labor practice under EERA, which must be resolved by PERB. (*Id.* at pp. 888-889.) "Indeed, to hold otherwise would permit a party to avoid exhaustion merely by avoiding any express claim of unfair practice or other EERA violation in its complaint." (*Id.* at p. 889.) "'[W]hat matters is whether the underlying conduct on which the suit is based--*however described in the complaint*--may fall within PERB's exclusive jurisdiction.' [Citation.]" (*Ibid.*) "'Sophistication of pleading actions is not the key to jurisdiction.' [Citation.]" (*Id.* at p. 890.)

Finally, the court found PERB could furnish the same relief the superior court could provide CSEA for the purportedly wrongful actions of the district. (*Barstow Unified School Dist.*, *supra*, 43 Cal.App.4th at p. 890.) Specifically, the court held, pursuant to the provisions of Government Code section 3541.5, subdivision (c), PERB has the authority to compel a school district to rescind a contract with a private party for the provision of services, refrain from entering into such a contract in the future, and make displaced classified employees whole for their lost wages and benefits. (*Ibid.*)

12

Additionally, if a school district ignored a PERB ruling, it could "bring an action in a court of competent jurisdiction to enforce any of its orders, decisions, or rulings." (Gov. Code, § 3541.3, subd. (j).)

We determine the *Barstow Unified School Dist.* case to be directly applicable to the jurisdiction issue we are confronted with because the underlying factual disputes are essentially the same. Administrative procedures enacted by the Legislature are important components of the legislative process, and the legislative process is left incomplete if a plaintiff does not exhaust administrative remedies. (*Barstow Unified School Dist.*, *supra*, 43 Cal.App.4th at p. 891.) "'A judicial action before the legislative process has been completed is premature and a court is without jurisdiction until administrative remedies have been exhausted. [Citation.] To hold otherwise would be to permit the courts to engage in an unwarranted interference with the legislative process.' [Citation.]" (*Ibid*.)

The present controversy clearly indicates an *arguable* EERA violation was involved in this dispute because CSEA contends the District: (1) eliminated all the purportedly classified ASIP and ASSC positions in June and July of 2008, after it entered into the partnership agreement with THINK; and (2) failed to adhere to the collective bargaining agreement's layoff procedures by not providing CSEA or any of the classified employees with notice of the District's elimination of the ASIP and ASSC positions. Moreover, it is undisputed representatives from the District arranged a meeting with CSEA on March 14, 2008, to, among other things, assure CSEA the classified employees would continue to hold their after-school program positions after the District entered into the partnership agreement with THINK. CSEA also claims the District ignored two letters requesting information about the after-school programs, the partnership agreement with THINK, and the alleged displacement of classified employees. In fact, the second letter CSEA sent the District specifically asserts the District's actions may have violated the collective bargaining agreement. These allegations, especially in light of CSEA's

13

contention all the after-school tutoring positions were eliminated by the District following the THINK agreement, undoubtedly indicate this dispute *arguably* involves a violation of Government Code section 3543.5, subdivision (c), which requires the District to negotiate in good faith with CSEA.

Likewise, the legal dispute that was presented to the court and which could be brought before PERB is "fundamentally the same"—whether the District acted improperly with regard to the purported elimination of the ASIP and ASSC positions and execution of the partnership agreement with THINK. We agree with the court in *Barstow Unified School Dist.,* that the fact that the claims presented to the court and which could be brought before PERB would allege the violation of different laws does not preclude the application of the administrative exhaustion doctrine. (*Barstow Unified School Dist.*, *supra*, 43 Cal.App.4th at pp. 888-889.) As we noted above, "'[s]ophistication of pleading actions is not the key to jurisdiction.' [Citation.]" (*Id*. at p. 890.) What is most relevant to this inquiry is whether the purportedly offensive District conduct—"*however described in the complaint*"—*arguably* constituted an unfair labor practice under EERA, because the Legislature has established that such conduct must be initially reviewed by PERB. (*Id*. at p. 889.) Pursuant to the exclusive initial jurisdiction given to PERB by EERA, CSEA may not avoid PERB's initial review of this dispute by simply avoiding the inclusion of an express claim asserting an EERA violation in the complaint it filed with the court. If, as CSEA suggests, we were to focus this inquiry to the express claims asserted in petitions filed in the superior courts, we would take the unpermitted step of expanding the courts' jurisdiction to the detriment of the statutory exclusive initial jurisdiction the Legislature bestowed upon PERB. We refuse to circumvent the Legislature's undisputed power to establish jurisdictional boundaries through the enactment of statutes.

Finally, it is clear the remedies CSEA requested from the court could be furnished by PERB. CSEA's petition requested an order compelling the District to

14

rescind its partnership agreement with THINK, pay retroactive wages and benefits to the displaced classified employees, and reinstate the classified employees to their ASIP and ASSC positions. EERA authorizes PERB to order "an offending party to cease and desist from the unfair practice and to take such affirmative action, including but not limited to reinstatement of employees with or without back pay, as will effectuate the polices of [EERA]." (Gov. Code, § 3541.5, subd. (c).) Thus, PERB can grant CSEA "relief functionally equivalent to that available in a court action.' [Citation.]" (*Barstow Unified School Dist.*, *supra*, 43 Cal.App.4th at p. 890.)

CSEA argues *Barstow Unified School Dist.* is inapplicable to the present case because the appellate court's reasoning should be limited to instances where a petitioner has a concurrent unfair labor practice charge pending before PERB. Although the pending PERB action in the *Barstow Unified School Dist.* case made the appellate court's application of the three-party inquiry quite simple, its reasoning and the legal principles it relied upon are not restricted to circumstances where separate, concurrent claims are before both a superior court and the PERB. As we noted above, a court's inquiry when presented with a question as to whether PERB has initial jurisdiction over a dispute is whether the purportedly offensive conduct *arguably* constitutes an unfair labor practice under EERA. (*Barstow Unified School Dist.*, *supra*, 43 Cal.App.4th at pp. 888-889.) A petitioner may not avoid PERB's consideration of an EERA dispute by way of procedural gamesmanship or sophisticated pleading. (*Id*. at pp. 889-890.) Such litigation tactics do not control questions relating to the exclusive initial jurisdiction bestowed upon PERB by the provisions of EERA.

We hold the trial court lacked jurisdiction to proceed on CSEA's Education Code claims because CSEA failed to exhaust administrative remedies before PERB, which may resolve the underlying dispute. Therefore, we direct the court to issue a stay as to these proceedings, rather than dismiss the petition, until CSEA exhausts pertinent proceedings before PERB. "'The stay protects the status quo of the contract issues

15

pending the resolution of PERB of the unfair practice issues which are within its exclusive jurisdiction and subject to review only pursuant to the limits provided in [Government Code] section 3542.'  [Citation.]"  (*Barstow Unified School Dist.*, *supra*, 43 Cal.App.4th at p. 892.)  Should CSEA exhaust administrative remedies before the PERB with regard to this dispute, absent adequate administrative relief for the harms allegedly caused by the purported Education Code violations, the court should lift the stay on the proceedings to permit the pursuit of judicial relief before the court by CSEA on grounds the partnership agreement violates provisions of the Education Code.

## DISPOSITION

The judgment of the court is reversed and the matter is remanded with directions to stay the proceedings as to the Education Code claims asserted by CSEA until it exhausts administrative remedies.  In the interests of justice, both sides shall bear their own costs on appeal.

O'LEARY, P. J.

WE CONCUR:

RYLAARSDAM, J.

IKOLA, J.

16